**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Criminal No.    1:21-cr-00099-LM** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MICHAEL CLEMENCE** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**UNITED STATES' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER**

---

Defendant Michael Clemence is charged with Possession of Child Pornography in violation

of 18 U.S.C. §§ 2252A(a)(5)(B) & 2252A(b)(2).   After a detention hearing on June 22, 2021,

Magistrate Judge Andrea Johnstone issued a written Order of Detention Pending Trial.   (Doc. 14).

Considering the factors set forth in 18 U.S.C. § 3142(g), the Magistrate Judge found that, while a

set of conditions could be crafted pursuant to 18 U.S.C. § 3142(c) that would reasonably assure

the Defendant's appearance as required, no condition or combination of conditions of release

would reasonably assure the safety of any other person and the community.

Defendant moves the Court to revoke the Magistrate Judge's order of detention.   (Doc.

16).   The United States objects to a revocation of the detention order.   Because the order was

amply supported by the record and based upon careful analysis of the factors set forth in 18 U.S.C.

§ 3142(g), this Court should not disturb the Magistrate Judge's order of detention.

**A.   Standard of Review**

1

Pursuant to 18 U.S.C. § 3145(b), district courts have jurisdiction to review a detention order imposed by a magistrate judge. ("If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." *Id.*) When a district court reviews the findings of a magistrate judge with respect to pretrial detention, it engages in a *de novo* review of the contested order. *United States v. Tortora*, 922 F.2d 880, 884 n. 4 (1st Cir. 1990); *see also United States v. Perozzi*, No. 09-cr-117-16-SM, 2009 WL 2929292, at *2 (D.N.H. Sept. 9, 2009) (conducting de novo review of magistrate judge's detention order). In doing so, the Court may reject the magistrate judge's factual findings and start the hearing anew or may accept the findings of fact made by the magistrate judge and hear additional facts and argument. *United States v. Oliveira*, 238 F.Supp. 3d 165, 167 (D. Mass. 2017).

The Bail Reform Act authorizes courts to detain a criminal defendant upon finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making its bail determination, courts are required to consider information regarding: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The Government bears the burden of demonstrating dangerousness by clear and convincing evidence, and must support a finding of risk of flight by a preponderance of the evidence. *United States v. Johnson*, 12-mj-01-01-LM, 2012 WL 40463, at *2 (D.N.H. Jan. 6, 2012).

**B.   Analysis**

2

1.   **Nature and circumstances of the offense.**

Regarding the nature and circumstance of the offense, the United States proffers the following facts.

In February 2020, the HSI Manchester, NH, office received information that on April 28, 2019, an individual using an IP address associated with a residence in Rochester, New Hampshire, accessed a known Darknet website that facilitated the sharing of child sex abuse and exploitation material with a particular emphasis on sexually explicit material depicting young boys.   Through further investigation, Michael Clemence ("Clemence") was identified as the subscriber of the internet service at that Rochester residence at the time of the illicit activity.   It was also determined that Clemence had subsequently moved to a different address in Rochester with his wife, Elizabeth, and two toddler-aged children.

On May 26, 2021, special agents with Homeland Security Investigations ("HSI") conducted a consensual knock and talk with Clemence, who was home alone, at his new home in Rochester.   Agents advised Clemence that they were investigating internet activity associated with child exploitation, and that some of this activity occurred April 2019 from the IP address associated with his previous residence.   Clemence expressed vague familiarity with the dark web, but denied any knowledge of The Onion Router, or "Tor," which was associated with the investigation.

Agents followed up with a consensual interview of Clemence's wife, Elizabeth, at their home in Rochester on June 4, 2021.   Elizabeth was home alone at the time of the interview. During the conversation, Elizabeth disclosed that on May 18, 2019, she was printing church documents from Clemence's laptop computer at their home and accessed a folder titled

"Documents."   Within the "Documents" folder, she saw approximately 14,000 images and videos of what appeared to Elizabeth to depict child pornography.   Elizabeth advised that their internet connection at that home was secure and that nobody had the password.

Elizabeth confronted Clemence about the illicit material on their computer, and he denied any knowledge of how it got there, suggesting that their computer must have been hacked. Elizabeth explained that she and Clemence considered going to the police, but at the time they were exploring the possibility of becoming foster parents and were concerned about jeopardizing their ability to do so.   As a result, they decided against going to the police and decided instead to wipe the hard drive themselves.   Elizabeth advised that they later gave the laptop to a couple from their church who now live in Maine, and that they wiped the hard drive a second time before doing so.   Elizabeth also shared that subsequent to the agents' interview with Clemence the previous week, Clemence had driven to Maine and retrieved the laptop in question.

Elizabeth disclosed that she and Clemence have an "open marriage" in the sense that they share access to each other's online accounts, including email, social media, financial accounts, etc.   They also share access to the electronic devices in the home.   She stated that when she learned from Clemence that agents had been at their residence the previous week and learned the nature of their investigation, she checked all of the thumb drives in the house for the presence of child pornography.   She did this without Clemence's knowledge and advised that she did not locate anything that appeared to be child pornography.   Agents advised Elizabeth to contact them if at any point in the future she discovered additional material of concern.   Agents left their contact information and departed the residence.

Very shortly thereafter, agents received a telephone call from Elizabeth Clemence

4

reporting that she had discovered what appeared to be child pornography in Clemence's Google Drive account, which was associated with his email address, both of which she also had access to.   Over the phone, Elizabeth described one video that depicted two young boys, approximately 13 years old, performing oral sex on each other.   She described another video in which it appeared that an adult male was engaged in anal penetration of a prepubescent boy who appeared to be approximately 10 years old.   The boy was blindfolded and had something over his mouth. Elizabeth also described a concerning photo of her three-year-old son that she observed in the Google Drive account.   She stated that her son was depicted naked from the waist down, facing a wall.   The photograph appeared to have been taken in the basement of the Clemences' home and depicted their son's buttocks, which bore a distinct red welt indicative of the child having been struck with an implement.   Elizabeth explained that Clemence is responsible for disciplining the children and stated that, when he does so, he takes them to a private area of the house.[1]

Based on this additional information, agents decided to return to the residence and secure it for purposes of obtaining a search warrant.   When they arrived at the residence, Clemence was parked in the driveway and seated in the driver's seat of his car with the driver's door open and his cell phone in his hand.   Before exiting the vehicle, Clemence placed his phone on the passenger seat.   Agents secured Clemence's phone and the residence while they applied for a search warrant, which was eventually signed and executed later that same day.   Clemence departed the residence in his vehicle prior to the warrant's execution.

---

[1] Agents later learned from Elizabeth that Clemence does, in fact, use a wooden implement to spank the children.

Pursuant to the search warrant, various electronic devices were seized from Clemence's residence.   A warrant for his Google Drive account was also obtained.   Preliminary examination of the devices seized pursuant to the search warrants revealed a variety of child pornography, child erotica, and other materials related to bondage and punishment.   A sampling of the materials so far discovered includes the following items.

- Over 2,000 items of evidentiary value from Clemence's Samsung Cell Phone, including:
  - images of child pornography and suspected child pornography, predominately involving minor males;
  - child erotica;
  - approximately 195 images of bondage, not all of which were child pornography;
  - installed applications frequently used to shield illicit behavior from discovery, including
    - "Telegram Messenger," a messaging app incorporating end-to-end encryption for secure and private communications;
    - "Shreddit – Data Eraser," an app that securely and permanently deletes files and data from the device, leaving the deleted items irrecoverable;
    - "Keepsafe Photo Vault: Hide Private Photos & Videos," an app designed for hiding photos and videos on the device by locking them with PIN protection, fingerprint authentication, and military-

6

grade encryption; and

- ▪ "Orbot: Tor for Android," an app providing anonymous access to the darkweb site Tor, which Clemence purported to have no familiarity with during his initial interview with HSI agents;

  o bookmarked Google Chrome searches for "Badboysimon spanking stories archive" and "Badboysimon stories archive";

  o Facebook Messenger chats in which Clemence discussed spanking and how the law makes it difficult to "discipline biblically."

- A 1GB "Geek Squad" thumb drive containing a deleted folder titled "System," in which there was a subfolder titled "Apps" containing:

  o an image of a shirtless adult male with pants below his buttocks, bent over a chair with his arms and legs fastened to the chair;

  o a subfolder titled "Gamesplat" containing two subfolders titled "Underwear" and "Wedgie," which contained, respectively,

  - ▪ 15 images of males approximately 8–12 years old in their underwear, and

  - ▪ 3 images of a minor male being held down and given a "wedgie" by at least two other individuals, and 1 image of a minor male pulling his own underwear up over his head in a "wedgie."

- The 16GB "Geek Squad" thumb drive, which contained a deleted folder titled "Conscript" with subfolders titled "Tales" and "Videos," as well as numerous folders whose titles began with "willing teens."   These and other deleted folders

7

on the thumb drive contained numerous deleted image files depicting child

pornography, child erotica, and bondage.

- A Kingston SD Card which contained photographs of Clemence in what appears

to be a cruise ship cabin, participating in spanking the exposed buttocks of

teenaged males and pulling these males' underwear up into their buttocks in

extreme "wedgies."   While these images do not necessarily depict child

pornography, there is a striking similarity between the conduct documented in the

photographs and many of the images on Clemence's devices that do constitute

child pornography and erotica. The boys depicted in the photographs have not yet

been identified, but the investigation revealed that they are likely boys who were

in Clemence's care when he worked as a "teaching parent" at a residential group

foster home in the Houston, Texas area.[2]

As noted above, in addition to the devices seized and examined so far, HSI has conducted

a preliminary examination of the contents of the Google Drive cloud storage account associated

with Clemence's Gmail address.   In addition to the previously mentioned troubling images of

Clemence's 3-year-old son, this Google Drive contained five videos depicting child

pornography.   The videos in this account appear to have been transferred to the Google Drive

from a mobile device.

Possession of child pornography, and possession of child pornography involving images

of prepubescent minors in particular, is a serious offense that weighs in favor of detention.

---

2  A notebook containing a long list of names of boys from this group home was found by
Elizabeth in Clemence's car subsequent to Clemence's arrest.

Based on the quantity and the nature of the materials involved in Clemence's offense, he is facing an estimated guideline sentencing range of 108-135 months in the event of a conviction after trial.   Investigation is ongoing, and further charges may be forthcoming.   Given the nature and circumstances of the offense and the involvement of minor victims, the record supports a finding that Clemence poses both a danger to the community and a risk of flight.   In short, the nature and circumstances of the offense support an order of detention.

   **2.    The weight of the evidence against Clemence is compelling.**

   Additionally, the weight of the evidence against Clemence is strong and weighs in favor of detention.   As noted above, the investigation of Clemence revealed child pornography materials on multiple devices owned by him as well as in a cloud storage account belonging to Clemence and associated with his email address.   Additionally, Clemence's wife reported discovering approximately 14,000 images and videos depicting child pornography on a computer owned by Clemence in 2019.   Around that same time in 2019, Clemence's IP address was reported to have accessed a known Darknet web site facilitating the sharing of child sex abuse and exploitation materials.   The Magistrate Judge correctly concluded that the weight of evidence is strong and weighs in favor of a finding of both dangerousness and risk of flight.

   **3.    History and characteristics of the defendant.**

   Clemence's history and characteristics also weigh in favor of detention.   Although Clemence has lived in New Hampshire for the past 6 years and has a history of involvement in his church and community, his most significant ties to this area are his wife and children.   His wife has indicated that she wants no contact with Clemence, and any potential conditions of pretrial release would likely preclude Clemence from contact with his wife and children.   Other than his

wife and children, Clemence's remaining family members, namely his mother and father, reside in Arizona and do not constitute meaningful ties to New Hampshire.   While his pastor and certain friends remain supportive of Clemence since his arrest, the erosion of Clemence's most significant ties to New Hampshire, points to a heightened risk of flight.

Also of note, Elizabeth expressed to agents concern that Clemence intended to flee shortly after his arrest.   Elizabeth reported that Clemence, through their pastor, David Koenick, requested that Elizabeth retrieve identification documents from the location in her home where Clemence stored his U.S. Passport, Social Security Card, and other personal records.   Clemence and Koenick have subsequently maintained that he did not make a specific request for his passport, and that his request for identification documents was related to his desire to seek new employment and his expectation that he would need identity documents for that purpose. Given this explanation, the Magistrate Judge found that this factor was neutral and did not weigh strongly in favor of either detention or release.

The Magistrate Judge also found that several elements of Clemence's past conduct weighed in favor of his detention pending trial.   Of particular concern was the fact that Clemence was not deterred in possessing and accessing child pornography despite residing in a stable environment with his wife and children and his wife's ability to access the electronic devices and accounts that he used in relation to the instant offense.   In addition, Clemence was not deterred by his wife's prior discovery of child pornographic materials on his laptop computer in 2019.   Thus, the Magistrate Judge properly concluded that Clemence's proposed release plan, and the availability of a stable, suitable residence with the Obreys, was not in itself sufficient to ameliorate the danger to the community posed by Clemence's release from custody.

In addition to the above factors, Clemence currently lacks stable employment and recently withdrew the savings from his retirement account, amounting to approximately $12,000.00.   The Magistrate Judge noted that this was uncharacteristic financial behavior, as Clemence's wife, Elizabeth, generally controlled the household finances.   However, the Magistrate Judge found these particular factors to be overall "neutral" in light of Defense Counsel's assurance that the $12,000.00 was to cover attorney's fees and that Clemence means to pursue employment if released.

### 4.  Dangerousness

The most important factor in favor of Clemence's detention is the danger he poses to the community if released.   Possession of child pornography is not a victimless crime.   Indeed, the victims depicted in images and videos such as those found in Clemence's possession suffer repeated and ongoing victimization each time the documentation of their abuse is shared, sold, purchased, or viewed by another offender.   The record indicates that Clemence was undeterred by his wife's discovery of child pornography on his laptop computer in the past, and that child pornographic materials remained on devices and accounts that his wife had access to, despite the risk of her once again discovering these materials.   There is nothing to indicate that ongoing supervision or the risk of discovery will prevent Clemence from future offenses.

Moreover, there is an ongoing theme present throughout much of the material so far discovered.   The majority of the items discovered across Clemence's devices, including not only the child pornography materials but also the materials depicting child erotica, bondage, and other more seemingly innocuous images, generally relate to young boys and spanking or physical punishment.   This theme is further borne out by Clemence's involvement in online groups focused

11

on spanking, his online search histories, and concerning images of Clemence spanking and giving wedgies to young boys that were entrusted to his care as a foster parent.   Altogether, there seems to be pattern or focus which strongly suggests that Clemence poses a danger to the community, and this danger warrants his ongoing detention.

Relatedly, the disturbing photographs of Clemence's 3-year-old son are also relevant to the dangerousness inquiry, particularly in light of the similarity between some of the photos of Clemence's son and many of the child pornography and child erotica materials discovered in this case.   As noted above, many of the images and videos discovered in this case involve young Caucasian males being physically disciplined, with an emphasis in certain materials on young boys' buttocks.   There are striking similarities between some of these materials and the photograph of Clemence's young son's buttocks with a distinct red welt.   Additionally, Clemence was a member or participant in online groups discussing spanking and other methods of physical discipline for children.   While there is no evidence linking these specific groups to the production or dissemination of child pornography, Clemence's involvement in these groups is nonetheless troubling.   Cumulatively, the circumstances of this case raise significant concerns for the safety of Clemence's young son.

The Magistrate Judge also noted that Clemence had briefly owned a firearm, which he returned to Renaissance Firearms a short time later at his wife's request.   A computer seized from Clemence's hotel room on June 7, 2021, revealed that he conducted an internet search for Renaissance Firearms on June 7, 2021, just hours before his arrest.   Clemence claimed at his initial detention hearing that he conducted this search because he was investigating his wife's purchase of a Taser.   However, Elizabeth Clemence later advised that she did not purchase a Taser from

Renaissance, though she did purchase pepper gel, a personal defense product, within one or two days of her interview with HSI agents and Clemence's departure from their family home.   The timing of this purchase strongly suggests that Elizabeth felt the need to protect herself and/or her family and is consistent with statements made by Elizabeth expressing concern for her physical safety if Clemence is released from custody.

### C.  Conclusion

The Magistrate Judge held an evidentiary hearing and concluded that Clemence is not a suitable candidate for pretrial release.   Clemence presented a release plan at the June 22, 2021, detention hearing, but the Magistrate Judge found that no condition or combination of conditions of release could ensure the safety of the community or any other individual.   As set forth above, this finding is amply supported by the record.

For the foregoing reasons, the United States urges this Court to order that the Defendant remain detained pending trial.

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney

By:     /s/ Kasey A. Weiland
Assistant United States Attorney

### CERTIFICATE OF SERVICE

13

I, Kasey A. Weiland, Assistant United States Attorney, do hereby certify that a copy of the foregoing was forwarded by electronic means, via the Court's Electronic Filing System, to all parties of record.

This 6th day of July, 2021.

                                        /s/   Kasey A. Weiland         

                                        Assistant United States Attorney