UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

      v.                                                                        Criminal No. 21-cr-099-LM

<u>Michael Clemence</u>

## **Public Access Findings**

**I.  Background**

This in-court bail hearing is taking place during the public health emergency caused by the COVID-19 outbreak.  The defendant did not consent to have this hearing occur via video.  I find that the in-court hearing can be held safely so long as the court minimizes the number of individuals present in the courthouse during the hearing.  The protocols for this in-court hearing are laid out in Standing Orders 21-14 (Entrance Protocols), and 20-27 (Protocols for in-court hearings).  I find that, under the unique circumstances presented by the COVID-19 pandemic, allowing public access to this in-court hearing via a combination of capped in-person attendance and attendance via an "overflow" courtroom where the hearing will be shown on a large screen is the best way to ensure the safety of the litigants, court personnel, and the public at large.  All findings made in the court's prior standing orders are incorporated herein.  <u>See</u> Standing Orders 21-9 (Mar. 10, 2021), 20-25 (July 24, 2020), 21-19 (May 26, 2021).[1]

---

[1] This court's current Standing Orders regarding the COVID-19 outbreak can be found here: http://www.nhd.uscourts.gov/court-response-coronavirus-disease-covid-19 .

Before making this public access determination, I carefully considered the defendant's, the public's, and the press's rights to in-person access to court proceedings.  See Bucci v. United States, 662 F.3d 18, 22 (1st Cir. 2011) (citing Waller v. Georgia, 467 U.S. 39, 48 (1984)); see also Presley v. Georgia, 558 U.S. 209, 213 (2010) (explaining that Sixth Amendment guarantees at least as much public access as does First Amendment).  This Order details my findings.

## II.     Partial Rather Than Total Closure

I first find that permitting public access to this hearing via a numeric limit on in-person attendance alongside the use of an overflow courtroom constitutes a partial, rather than total, closure of these proceedings.  I so find because the goals of public access will still be achieved: this proceeding is not being held in secret and the public (including the defendant's family and supporters) will have the opportunity to observe this proceeding in real time from the courthouse where the proceeding is occurring.  See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 593-97 (1980)  (Brennan, J., concurring)  (discussing the functions of public access to court proceedings, including ensuring that procedural rights are respected and that justice is afforded equally, maintaining public confidence in the administration of justice, promoting accurate fact-finding, and enabling the public to act as a check on judicial power); see also Bucci, 662 F.3d at 22 (discussing benefits of openness in criminal proceedings).  I further find that the closure is partial rather than total because, although "courtroom access is restricted . . . some members of the public [will be] permitted to attend" the hearing in-person.  Bucci, 662 F.3d at 23. For the

reasons discussed below, and under the extraordinary circumstances presented by the continuing COVID-19 pandemic, the court finds this partial closure is necessary.

### III.   Findings in Support of Necessity for this Partial Closure

   A. **First, the court finds that protecting the health and safety of the public and the parties to this proceeding from the spread of COVID-19 is a substantial interest that would be jeopardized and prejudiced if the court did not impose this partial closure.**

Since the first announced case in New Hampshire on March 2, 2020, the state has reported 99,626 confirmed cases of COVID-19.[2]  So far, 1,373 deaths have been attributed to the disease in this state.  Further, in New Hampshire over 2,445,689 total COVID-19 tests have been reported (both positive and negative test results), and community-based transmission has been confirmed.[3]  Nationally, the number of confirmed cases has grown to over 34,622,690 with 621,561 cases resulting in death.[4]

Given the contagious nature of the virus and the exponential growth in cases, COVID-19 presents an enormous danger to the health and safety of the public,

---

[2] New Hampshire Department of Health and Human Services, COVID-19, https://www.nh.gov/covid19/  (last visited 8:50 a.m. June 7, 2021); Real Clear Politics, https://www.realclearpolitics.com/  (last visited 8:50 a.m. June 7, 2021).

[3] New Hampshire Department of Health and Human Services, COVID-19, https://www.nh.gov/covid19/  (last visited 8:50 a.m. June 7, 2021); Real Clear Politics, https://www.realclearpolitics.com/  (last visited 8:50 a.m. June 7, 2021).

[4] Real Clear Politics, https://www.realclearpolitics.com/  (last visited 8:50 a.m. June 7, 2021).

including the litigants, security and court personnel involved in this proceeding. The court's interest in preventing the spread of COVID-19 and preserving the health of all hearing participants, including the public, is a weighty and substantial interest that would likely be prejudiced if the court did not impose this partial closure.  See United States v. Smith, 426 F.3d 567, 572-73 (2d Cir. 2005) (finding that U.S. Marshal's policy after September 11th of requiring unknown visitors to court to produce photo identification constituted partial closure of courtroom that was justified by substantial interest of promoting security and preventing terrorism).

### B. Second, I find that this partial closure of court proceedings is narrowly-tailored to protect public health and safety.

The court's current protocols allow for 15 individuals (including the judge, court staff, defendant, and attorneys) to be inside the courtroom during a hearing. Once the number of individuals reaches 15, the courtroom is closed to further in-person attendees.  The court's protocols permit a presiding judge to allow 15 additional individuals into an "overflow" courtroom to watch the proceeding on a large screen.

Restricting the number of persons who may attend these proceedings allows those who do attend to safely practice social distancing in accordance with public health guidelines. At the same time, allowing members of the public beyond those who may safely attend in-person to view the proceedings via an overflow courtroom permits additional persons to observe the proceedings from within the courthouse.

4

Such public observation serves the policy concerns underlying the First and Sixth Amendment public trial rights without substantially endangering the health of those observers or increasing the danger to the health of in-person attendees. See Richmond Newspapers, 448 U.S. at 593-97.

I find that providing public access to this proceeding in this manner is the least restrictive means of protecting the substantial interest of public health and safety.  See United States v. Alimehmeti, 284 F. Supp. 3d 477, 490 (S.D.N.Y. 2018) (granting partial closure of courtroom to protect identity of undercover agents: courtroom was closed to public during undercover agents' testimony but audio of testimony was live-streamed into different courtroom during partial closure and transcripts of testimony were made available to public promptly).

C. **Third, I have considered reasonable alternatives to this partial closure**.

The court has considered, for example, imposing no limits on public access to the proceedings, but concludes that this alternative is not reasonable because it would not allow for sufficient social distancing measures. The court has also considered permitting the public to observe the proceedings solely through videoconferencing technology. And it has considered allowing the public to observe solely through in-person attendance without providing an alternative means of observation once the courtroom reaches capacity. The court ultimately concludes, however, that numerical limits on in-person attendance alongside the use of an overflow courtroom strikes the appropriate balance. This course of action allows at least some members of the public—

5

including the defendant's friends and family—to physically attend the proceedings while also allowing additional persons to observe the proceedings from within the courthouse where they are occurring.

### IV.    Conclusion

In sum, the court finds that in this case a partial closure of court proceedings is necessary in that, once the courtroom reaches capacity, public access to this in-court hearing will via an overflow courtroom.  This partial closure is justified by the substantial interest in protecting public health and safety from the spread of COVID-19 and is narrowly tailored to protect that interest.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

Date: June 7, 2021

cc:    Counsel of Record.