**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

United States of America

v.

Michael Clemence

1:21-cr-00099-LM

**DEFENDANT'S SENTENCING MEMORANDUM**

The Defendant, Michael Clemence, by and through counsel, hereby submits this Memorandum in support of his request that the Court vary from the Sentencing Guidelines and sentence him to a term of 24 months followed by a period of 10 years of supervised release. Supervised release conditions should include a sex offender group treatment program, as well as computer restrictions, and periodic polygraph testing as a treatment tool to ensure that the defendant is in compliance with the requirements of his supervision and treatment program. This sentence is appropriate given his very low risk to reoffend, his complete lack of criminal history, his remorse, and his willingness to engage in treatment.

I.    Introduction

On June 14, 2021, Michael Clemence was named in a one-count Indictment, charging him with possession of child pornography in violation of 18 U.S.C. 2252A(a)(5)(B) and (b)(2). On December 7, 2021, Mr. Clemence pleaded guilty to this offense.

II.    The Plea Agreement

The parties agree that the Government will request a sentence within a sentencing range of 63 – 78 months of imprisonment. This range reflects the United States' agreement

1

to recommend that the Court apply a 2-level downward variance to offset the "use of computer" enhancement at U.S.S.G. §2G2.2(b)(6).

III.     Guideline Calculations

The applicable guideline is found at U.S.S.G. § 2G2.2.  Mr. Clemence starts at an offense level of 18.  To that base level one increases the level 2 points for possession of images of pre-pubescent minors, 4 points for possession images depicting sadistic or masochistic conduct, 2 points for use of a computer, and 5 points because the offense involved at least 600 images.

The offense level is reduced by 3 points for acceptance of responsibility.  Thus, the Total Offense Level is 28.  Presentence Investigation Report (PSR) ¶ 39.  Applying a CHC of I yields an advisory guideline sentencing range (GSR) of 78 - 97 months.  As stated above, this total offense level includes a two-level enhancement because the offense involved a computer.  The Government will recommend that the Court apply a 2-level downward variance to offset this particular enhancement.  After this variance, the GSR will reduce to the number reflected in the plea agreement, 63 – 78 months.

IV.     Nature and Circumstances of the Offense

Mr. Clemence takes no issue with the description of the offense as set forth in the Presentence Investigation Report.

V.     History and Characteristics of the Defendant

After calculating the GSR, the Court should weigh the factors set forth in 18 U.S.C. 3553(a) before determining the sentence.  As the First Circuit explained in *United States v. Martin*, 520 F.3d 87 (1st Cir 2008):

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself

2

>constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." [*United States v.*] *Gall*, 128 S. Ct. 586 (2008) at 598.

>*Id.* 520 F.3d at 91.

Mr. Clemence is 36 years old. He was born and raised in Mesa, Arizona. His parents divorced when he was five years old. Initially he stayed with his father who worked full-time and never remarried. Thus, Mr. Clemence was a "latchkey" child for most of his childhood. He would see and stay with his mother throughout his childhood as well, though less frequently than with his father.

In recent years, Mr. Clemence's father's health has declined. He had surgery to remove a brain tumor, but the prognosis is that it will likely return. He has also suffered two strokes. Mr. Clemence would very much like to be able to see, and care for, his father before he passes.

Mr. Clemence got along well with both his parents, and they did not abuse him either physically or mentally. However, the PSR and the psychosexual evaluation, both attached as exhibits to this Memorandum, describe two traumatic sexual assaults. Mr. Clemence suffered the first assault when he was 7 years old, and the second when he was 12 years old. They are described in detail in the sealed evaluation. The evaluation indicates that Mr. Clemence suffers from Post-Traumatic Stress Disorder (PTSD) as a result.

Mr. Clemence left high school after his sophomore year. However, he later earned his GED in 2008. His first significant job after earning his GED was at "Boys and Girls Country" in Houston Texas. This is a residential facility for children aged 5 – 18 years of

3

age.  Mr. Clemence lived in one of the homes and provided residential support.  It was in Texas that he met his wife, Elizabeth.

Elizabeth and Mr. Clemence married in 2014.  They moved to New Hampshire a couple of years later.  They have two children, a son E., aged 4 and a daughter N., age 2.  As a result of this offense, Mr. Clemence and Elizabeth are getting divorced.  Mr. Clemence will, of course, not have custody of his children in the near term, if ever.  This is a source of great sadness for him, as he prided himself on being a good parent.  He is hopeful, however, that he will be able to be a presence in his children's lives as time progresses.

In addition to his marriage and starting a family, the last 5 years were notable for Mr. Clemence with respect his work history.  Mr. Clemence steadily progressed from his first job in New Hampshire as a debt collector, to sales associate, to financial advising, and finally to insurance sales.  His work history makes clear that Mr. Clemence is no stranger to hard work.  Indeed, he has already made contacts and plans to work in the energy auditing field upon his release from incarceration.

Mr. Clemence has strong family and friend support.  This is demonstrated by the Letters of Support collected in Exhibit 'A' attached to this Memorandum.  He is also hardworking, as discussed above.  These two features bode well for his re-entry into society after incarceration.  However, these are not the only factors the Court must consider.  In addition, the Court should take into account Mr. Clemence's remorse, his amenability to treatment, and his likelihood of recidivism.

Mr. Clemence feels extreme remorse for his actions.  He has reviewed the voluminous victim impact statements.  These firsthand accounts of personal damage have revealed to him the far-reaching consequences of his actions more than any academic study

4

or secondary source could.  He understands the need for restitution and has committed to making those payments.

With respect to amenability to treatment, counsel directs the Court to the psychosexual risk evaluation completed by Derek Edge, LCMHC. (Evaluation) It has been filed under seal as Exhibit 'B" to this Memorandum.  The evaluation was extensive, with six separate assessments administered in addition to a detailed personal interview and a review of the investigative file.  On the issue of treatment, Mr. Edge states that Mr. Clemence was "open and honest about his actions and history" and that he is "generally intelligent and had a positive and realistic attitude about treatment and personal change." *Evaluation*, at 17.  He concluded that Mr. Clemence was at the "preparation" stage of change "meaning he is willing to do the work needed if he had the resources within his current environment."  *Id*.  The likelihood that Mr. Clemence will actively and meaningfully engage in treatment if given the chance is high.

Finally, the low risk of recidivism is important in this case and militates in favor of a below guideline sentence.  Based on the extensive testing and the personal interview, Mr. Edge concludes that Mr. Clemence is at a very low risk to reoffend.  Mr. Edge recognizes that "[a]lthough there appears some speculation regarding past behavior, …. there was no evidence presented during this evaluation to suggest he's committed a contact offense."* *Id*. at 16.  He categorizes Mr. Clemence as an "internet-only" offender.  These offenders have very low recidivism rates, 4.6 % over 1 ½ - 6 years with only 2% committing a contact

---

*It is important to note that Mr. Edge had access to the investigative file in this case, which included the description of a picture Mr. Clemence took of his son.  Mr. Clemence will address this picture with the Court at sentencing.  He will explain that he took the picture because he had spanked his son and felt he had used more force than he intended.  He took the photo as a reminder that he went too far on this occasion.  There are no other pictures of his son or his daughter in any of the devices searched by the agents.

5

offense.  Additionally, Mr. Clemence presents more as a "fantasy driven" offender as opposed to a "contact-driven" offender.  People in this category "endorse fewer cognitive distortions" than contact-only offenders and their "usage appears to be confined to the engagement with the images".  *Id*.  The low risk assessment supports the below guideline sentence as well.

Mr. Clemence has a solid plan for release.  He will relocate to Arizona where he has family and friends.   He plans to start a business performing energy audits and has contacts in that field.  He will follow the treatment recommendations made in the Evaluation.  He is remorseful and at a low risk to reoffend.  Mr. Clemence requests that the Court sentence him to 24 months of imprisonment, followed by 10 years of supervised release.  This sentence is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing.  *See* 18 U.S.C. § 3553(a).  The Court should adopt his sentencing proposal.

VI.     Motion for a Variance

The particular circumstances of Mr. Clemence's background, set forth in Section V above, establish that a variance is appropriate.   In addition, the unique nature of the child pornography guidelines support a variance in this case.

While the Guidelines must still be properly calculated and the court must consider the advisory Guidelines range, the court may not presume this advisory range is reasonable. *United States v. Stone*, 575 F.3d 83, 94 (1st Cir. 2009). The advisory Guidelines range now serves as merely an initial benchmark for sentencing, which is ultimately considered along with other 18 U.S.C. §3553(a) factors. *See Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007).

6

U.S.S.G. §2G2.2 of the Sentencing Guidelines, "is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what §3553 requires." *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010); *see also United States v. Stone*, 575 F.3d 83, 97(1st Cir. 2009) ("[W]e wish to express our view that [§2G.2 is] harsher than necessary . . . [F]irst-offender sentences of this duration are usually reserved for crimes of violence and the like."); *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010) (finding district court provided compelling explanation for policy concerns and justification for sentence outside range).

Because the child pornography guideline offense levels and enhancements were directed by Congress and were not the result of "an empirical approach based on data about past sentencing practices," the resulting Guideline ranges can yield unreasonably high sentences in otherwise "run-of-the-mill cases." *United States v. Dorvee*, 616 F.3d at 186-87. *See also United States v. Tutty*, 612 F.3d 128, 132-33 (2d Cir. 2010) (suggesting that the guidelines can generate "unreasonable results" if not "carefully applied.").

The above concern expressed by the Circuit Courts was validated by the Sentencing Commission in 2012. That year, the United States Sentencing Commission examined child pornography sentencing outcomes. *See* U.S. Sentencing Comm'n, *Report to the Congress: Federal Child Pornography Offenses*, ii-iii (2012) ("The Report"). The Commission compiled The Report in part to address the increasing rate of below-guideline sentences for offenders sentenced under §2G2.2 and because the sentencing data "indicate[d] that a growing number of courts believe[d] that the current sentencing scheme in non-production offenses [was] overly severe for some offenders." *Id*. at ii. The Commission concluded that the non-production child pornography sentencing scheme should be revised to account for,

7

*inter alia*, technological changes in offense conduct. *Id*. at 329-30.  Congress has not acted on those recommendations and the guideline enhancements remain intact.

In June 2021, the United States Sentencing Commission published its study concerning Federal Sentencing of Child Pornography: Non-Production Offenses. *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf (last visited March 3, 2022) ("2021 Report"). This publication served to update and expand the U.S. Sentencing Commission's 2012 Child Pornography Report. *Id*. at 2-3. The 2021 Report recognized that the Congress did not take action on the recommendations made in the 2012 Report and noted that judges continue to sentence non-production offenders below the guideline range. *Id*.

The 2021 Report produced key findings which once again underscore how the guideline enhancements have not evolved with the current technology and have "become so ubiquitous that they now apply in the vast majority of cases sentenced under [USSG] 2G2.2." *Id*. at 4. For example, "in fiscal year 2019, over 95 per cent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12)". *Id*. Enhancements for images depicting sadistic conduct or abuse of an infant or toddler were applied in 84% of cases and an enhancement for having 600 or more images was applied in 77.2% of cases. *Id*. (noting that non-production offenses involved median number of 4,265 images).

Further evidence that a variance is warranted can be found at the "Judiciary Sentencing Information" website, which was recently released by the United States Sentencing Commission.  This site compiles sentencing data based on the offense charged, the total

8

offense level and the criminal history category.  It can be found at

https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited March 3, 2022).

The JSIN website reveals the following with respect to Mr. Clemence's case.  During the last five fiscal years (FY2016-2020), there were 191 offenders whose primary guideline was §2G2.2, with a Final Offense Level of 26 and a Criminal History Category of I, after excluding offenders who received a §5K1.1 substantial assistance departure. For the 185 offenders (97%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 45 month(s) and the median length of imprisonment imposed was 48 month(s).  These median and average numbers are likely skewed higher due to the fact that they do not include sentences of probation or time served sentences.

VII.   Other Considerations

With respect to restitution, it is anticipated that the parties will agree that Mr. Clemence should be sentenced to the mandatory minimum of $3,000.00 for each victim who has requested restitution.  Thus, the total amount of restitution is $39,000.00.  As explained in the PSR, Mr. Clemence and his wife, who are soon to be divorced, have a net worth of approximately $6,000.00.  *See* PSR ¶75.  Because he is now indigent, Mr. Clemence requests that the Court not assess additional assessments pursuant to either 18 U.S.C. § 3014 or 18 U.S.C. § 2259A.

The defendant respectfully requests that the Court recommend that he be designated to FMC Devens in Ayer, Massachusetts.  If designated to FMC Devens Mr. Clemence will be allowed to participate in the Sex Offender Management Program (SOMP), the primary goal of which is to help sexual offenders manage their behavior in order to reduce sexual re-offending. The program consists of several components, including sex offender education

9

and treatment, as well as psychiatric treatment, and community release planning. Information about SOMP is attached as Exhibit 'C' to this sentencing memorandum.

VIII. <u>Requested Relief</u>

Wherefore, Michael Clemence, through counsel, requests that the Court sentence him as requested in this memorandum, and to such other terms as it deems just and proper.

          Respectfully submitted,
          MICHAEL CLEMENCE,
          By and through his counsel,

          */s/ John P. Newman*
          John P. Newman, Esq.
          NHBA No.: 8820
          Newman Law Office, PLLC
          15 High Street
          Manchester, NH 03101
          (603) 935-5603

<u>CERTIFICATE OF SERVICE</u>

I, John P. Newman, hereby certify that a copy of the foregoing Memorandum has been forwarded March 11, 2022, to Kasey Weiland, Esq., at the Office of the United States Attorney, James C. Cleveland Federal Building, 53 Pleasant Street, 4th Floor, Concord, NH 03301.

          */s/ John P. Newman*
          John P. Newman