UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  No. 1:21-CR-00099-LM |
| | ) |
| MICHAEL CLEMENCE | ) |

### Government's Sentencing Memorandum

The United States respectfully asks this Court to impose a sentence of 78 months' imprisonment in this case. This sentence represents the high end of the advisory guideline range, taking into account the parties' non-binding recommendation that the Court apply a 2-level downward variance to offset the "use of computer" enhancement at USSG §2G2.2(b)(6). The defendant pleaded guilty to one count of possession of child pornography. Forensic review of various electronic devices seized from his residence revealed the presence of child pornography with an emphasis on bondage and prepubescent boys. According to the National Center for Missing and Exploited Children, the defendant possessed over 1,300 images depicting known (previously identified) minor victims.

### The Guidelines

The United States agrees with the probation officer's calculation of the sentencing guidelines, which fixes the defendant's sentencing range at 78-97 months. Under *United States v. Booker*, 543 U.S. 220, 245 (2005), the Sentencing Guidelines are merely advisory. Nonetheless, at sentencing, "district courts are still required to 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" *United States v. Millan-Isaac*, 749 F.3d 57, 66 (1st Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). "[C]orrectly calculating the GSR serves an important function; it provides a 'framework or starting point' to

guide the exercise of the court's discretion." *Millan-Isaac*, 749 F.3d at 66 (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011)). After giving both parties an opportunity to be heard, the district court should then consider all of the factors under 18 U.S.C. § 3553(a) to fashion an appropriate sentence. *See Gall*, 552 U.S. at 49-50.

Nature and Circumstances of the Offense

The defendant's offense is a serious one. In February 2020, the HSI Manchester, NH, office received information that on April 28, 2019, an individual using an IP address associated with a residence in Rochester, New Hampshire, accessed a known Darknet website that facilitated the sharing of child sex abuse and exploitation material with a particular emphasis on sexually explicit material depicting young boys. Through further investigation, the defendant was identified as the subscriber of the internet service at that Rochester residence at the time of the illicit activity.

Following consensual interviews of the defendant and his wife, agents learned that in 2019, Mrs. Clemence had discovered approximately 14,000 images and videos of what appeared to be child pornography on the defendant's laptop computer. Upon learning from agents the nature of the instant investigation, Mrs. Clemence reviewed a number of shared electronic devices and online accounts, which led her to discover what appeared to be child pornography in the defendant's Google Drive account. Specifically, Mrs. Clemence described a video that depicted two young boys, approximately 13 years old, performing oral sex on each other. She described another video in which it appeared that an adult male was engaged in anal penetration of a prepubescent boy who appeared to be approximately 10 years old. The boy was blindfolded and had something over his mouth.

Mrs. Clemence also described a concerning photo of her three-year-old son that she observed in the defendant's Google Drive account. She stated that her son was depicted naked from the waist down, facing a wall. The photograph appeared to have been taken in the basement of the Clemences' home and depicted their son's buttocks, which bore a distinct red welt indicative of the child having been struck with an implement. Though the defendant has offered an explanation for this photograph that is on its face innocuous, it is nonetheless of grave concern given the many hundreds of images located on the defendant's devices, many of which focus on bondage and spanking of prepubescent boys. The defendant's devices also contained bookmarked Google Chrome searches for "Badboysimon spanking stories archive" and Facebook Messenger chats in which Clemence discussed spanking and how the law makes it difficult to "discipline biblically."

The search of the defendant's home also yielded an SD card which contained photographs of the defendant in a cruise ship cabin, participating in spanking the exposed buttocks of teenaged males and pulling these males' underwear up into their buttocks in extreme "wedgies." While these images do not depict child pornography, there is a striking similarity between the conduct documented in the photographs and many of the images on the defendant's devices that do constitute child pornography and erotica. The investigation revealed that the boys depicted in the images were in the defendant's care when he worked as a "teaching parent" at a residential group foster home in the Houston, Texas area. Contact was made with several of the boys who were able to be identified in the images, and none of them disclosed any contact sex offenses or sexual assaults by the defendant.

In his motion for a downward variance, the defendant relies on the 2021 report by the United States Sentencing Commission related to non-production child pornography offenders. Specifically, the defendant refers to findings that the guideline enhancements to USSG §2G2.2 have "become so ubiquitous that they now apply in the vast majority of cases." While the United States does not disagree with the Commission's general finding in this regard, a reading of the full report makes clear nonetheless that the research and recommendations set forth therein do not support the variance the defendant seeks.

The enhancements at 2G2.2 were intended to help sentencing courts distinguish between the most and least culpable child pornography offenders. *See* United States Sentencing Commission's 2021 Report to Congress, "Federal Sentencing of Child Pornography: Non-Production Offenses," [hereafter, "USSC 2021 Report"], at 1, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf. Given the role of technology in child pornography offenses and the frequency with which many of the enhancements to 2G2.2 are now applied, the Commission's report cautions that the enhancements may no longer be an effective tool in making such distinctions. *Id.* at 2. Accordingly, the report encourages sentencing courts to give careful consideration to three primary factors when determining an appropriate sentence in non-production child pornography offenses: content, community, and conduct. *Id.*

The first factor, content, refers to the offender's child pornography collection and the nature of the offender's collecting behavior. USSC 2021 Report at 28. In considering the significance of this factor, a number of subfactors are suggested, including: the quantity of still images and videos in the collection; the age of the youngest victim depicted; the gender of the victims depicted; the methods of receiving and distributing child pornography; where the

4

offender stored the child pornography; and whether sophisticated efforts were made to conceal the distribution, receipt, or possession of the child pornography collection.  *Id.*

In this case, the defendant possessed over 1,300 images and videos of child pornography *of known/identified victims*, not to mention additional images of victims who have not been identified.  Though many of these images were deleted, the sheer number of devices and storage media on which child pornography was located indicates that the defendant was an avid collector.  The majority of his collection depicted prepubescent males, including toddler-aged children, and revealed a preference for images depicting bondage of young children.  Moreover, the defendant utilized several sophisticated methods of attempting to conceal his behavior, including use of the Darknet to obtain child pornography.  *See* USSC Report at 35.  The defendant's cell phone also had several installed applications that are frequently used to shield illicit behavior from discovery, including:

- "Telegram Messenger," a messaging app incorporating end-to-end encryption for secure and private communications;
- "Shreddit – Data Eraser," an app that securely and permanently deletes files and data from the device, leaving the deleted items irrecoverable;
- "Keepsafe Photo Vault: Hide Private Photos & Videos," an app designed for hiding photos and videos on the device by locking them with PIN protection, fingerprint authentication, and military-grade encryption; and
- "Orbot: Tor for Android," an app providing anonymous access to the darkweb site Tor, which the defendant purported to have no familiarity with during his initial interview with HSI agents.

In sum, the "content" factor is one that weighs heavily in favor of a guideline sentence.

The "community" factor examines the offender's degree of involvement with others in an internet community devoted to child pornography and child sexual exploitation. USSC 2021 Report at 28. According to the Commission, involvement in these types of online communities is concerning because it normalizes deviant sexual beliefs about children. *Id.* at 37. It also provides a forum for offenders to discuss sexual interest in children without fear of condemnation and helps offenders develop positive feelings about their online deviant sexual identities. *Id.* Finally, these communities have the effect of contributing to the market for child pornography. *Id.*

With regard to this factor, the Commission identified an offender as belonging to a child pornography community if he or she engaged in any of the following: 1) participating in an online group whose members interact with each other primarily via the internet through posts, discussions, and one-on-one chatting in a forum devoted to child pornography; 2) having conversations with at least one other individual about child pornography or the sexual abuse of a minor; 3) distributing or receiving child pornography via personal means (e.g., text, email, or instant message); or 4) working with another individual to produce child pornography.

Given the defendant's use of the Darknet as well as highly secured messaging apps such as Telegram, which use end-to-end encryption, the true extent of his involvement in an online community is not well known. As previously mentioned, chats were located on the defendant's computer in which he routinely discussed spanking with others, though not in an overtly sexual context. The psychosexual evaluation also notes that the defendant communicated online with other "like-minded people." Given the limited information available regarding the defendant's engagement in an online community, this factor is arguably neutral.

The final factor, conduct, examines an offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense, either during the instant offense or in prior history. *Id.* at 28. While there is no evidence to suggest that the defendant has committed contact offenses against any minors, the images depicting his spanking the exposed buttocks of several teenaged boys charged to his care is incredibly concerning given the content of his child pornography collection. More generally, that the defendant sought employment in a residential setting with vulnerable and at-risk youth given his admitted sexual interest in pre-pubescent children demonstrates, at best, extremely questionable judgment.

<u>The Defendant's History and Characteristics</u>

The defendant has no scorable criminal history, a fact which is reflected in his guideline calculation. By his own account, the defendant has been viewing child pornography since before he left high school in the 10th grade, and his viewing of this material has continued throughout his entire adult life. To his credit, the defendant recognizes his viewing of child pornography as problematic, but described it almost as a compulsion—something he has been able to abstain from periodically in the past, but which he continually returns to, particularly in times of stress. Notably, the defendant was not deterred from viewing child pornography despite having been "caught" in the past by his mother, then later his wife, and even after being initially confronted by federal agents. In fact, the defendant reported that his viewing of child pornography *increased dramatically* after federal agents first visited his home in connection with this investigation. This history would suggest that the defendant is at a high risk to reoffend.

Likewise, and contrary to defense counsel's characterization, the risk assessment performed as part of the psychosexual evaluation of the defendant appears to conclude that the defendant's risk to reoffend is *high*, not low, at least as it relates to online child exploitation

7

offenses.[1] In particular, in reviewing the defendant's scores on the "Internet Sex Screening Tool," the examiner concluded that the defendant's scores placed him within the "*highest risk* category, which suggests that online sexual behavior will interfere or jeopardize important areas of life (social, occupational, legal, etc.)."  The "very low recidivism rate" and percentages referenced by defense counsel on page 5 of his sentencing memorandum are rates associated "internet-only offenders" *generally*, and not this defendant specifically.  As mentioned above, the defendant's actual scores on various assessments administered by the examiner suggest that these "averages" are not an accurate reflection of *this defendant's* risk of engaging in future online sexual offenses.

## Conclusion

In light of the foregoing, the United States respectfully asks this Court to impose a sentence of 78 months' imprisonment followed by a 10-year term of supervised release.

Dated:  March 15, 2022

Respectfully submitted,
JOHN J. FARLEY
United States Attorney

By:   /s/ Kasey A. Weiland
Kasey A. Weiland
Assistant U.S. Attorney
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552

---

[1] The report, dated January 25, 2022, is careful not to offer actual recidivism estimates based on the examiner's misapprehension that the defendant had not yet been convicted of a child pornography offense, despite the defendant having plead guilty on December 7, 2021, and the examiner's interview taking place on December 21, 2021.  Instead of offering recidivism estimates, the report compares, examines, and discusses known risk factors.

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been served on counsel of record via the Court's electronic filing system.

*/s/ Kasey A. Weiland*
Kasey A. Weiland
Assistant U.S. Attorney