UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

    v.                                                        Criminal No. 21-cr-099-LM

<u>Michael Clemence</u>

**Public Access Findings**

**I.    Background**

This in-court sentencing hearing is taking place during the public health emergency caused by the COVID-19 outbreak. The defendant did not consent to have this hearing occur via video. I find that the in-court hearing can be held safely so long as the court minimizes the number of individuals present in the courthouse during the hearing. The protocols for this in-court hearing are laid out in Standing Orders 21-14 (Entrance Protocols), and 20-27 (Protocols for in-court hearings). I find that allowing public access to this in-court hearing via video—under the unique circumstances presented by the COVID-19 pandemic—is the best way to ensure the safety of the litigants, court personnel, and the public at large. All findings made in the court's prior standing orders are incorporated herein. <u>See</u> Standing Orders 21-9 (Mar. 10, 2021), 20-25 (July 24, 2020), 21-19 (May 26, 2021).[1]

---

[1] This court's current Standing Orders regarding the COVID-19 outbreak can be found here: http://www.nhd.uscourts.gov/court-response-coronavirus-disease-covid-19 .

Before making this public access determination, I carefully considered the defendant's, the public's, and the press's rights to in-person access to court proceedings.  See Bucci v. United States, 662 F.3d 18, 22 (1st Cir. 2011) (citing Waller v. Georgia, 467 U.S. 39, 48 (1984)); see also Presley v. Georgia, 558 U.S. 209, 213 (2010) (explaining that Sixth Amendment guarantees at least as much public access as does First Amendment).  This Order details my findings.

**II.     Partial Rather Than Total Closure**

I first find that permitting public access to this hearing via video constitutes a partial, rather than total, closure of these proceedings.  I so find because the goals of public access will still be achieved: this proceeding is not being held in secret and the public (including the defendant's family and supporters) will have the opportunity to observe this proceeding in real time.  See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 593-97 (1980)  (Brennan, J., concurring)  (discussing the functions of public access to court proceedings, including ensuring that procedural rights are respected and that justice is afforded equally, maintaining public confidence in the administration of justice, promoting accurate fact-finding, and enabling the public to act as a check on judicial power); see also Bucci, 662 F.3d at 22 (discussing benefits of openness in criminal proceedings).  I further find that the closure is partial rather than total because, although "courtroom access is restricted . . . some members of the public [will be] permitted to attend" the hearing in-person.  Bucci, 662 F.3d at 23. For the reasons discussed below, and under the

extraordinary circumstances presented by the continuing COVID-19 pandemic, the court finds this partial closure is necessary.

### III. Findings in Support of Necessity for this Partial Closure

**A. First, the court finds that protecting the health and safety of the public and the parties to this proceeding from the spread of COVID-19 is a substantial interest that would be jeopardized and prejudiced if the court did not impose this partial closure.**

Since the first announced case in New Hampshire on March 2, 2020, the state has reported 300,941 confirmed cases of COVID-19.[2] So far, 2,434 deaths have been attributed to the disease in this state. Further, in New Hampshire over 4,529,773 total COVID-19 tests have been reported (both positive and negative test results), and community-based transmission has been confirmed.[3] Nationally, the number of confirmed cases has grown to over 81,410,101 with 997,933 cases resulting in death.[4]

Given the contagious nature of the virus and the exponential growth in cases, COVID-19 presents an enormous danger to the health and safety of the public, including the litigants, security and court personnel involved in this proceeding. The court's interest in preventing the spread of COVID-19 and preserving the

---

[2] New Hampshire Department of Health and Human Services, COVID-19, https://www.nh.gov/covid19/ (last visited 8:00 a.m. March 21, 2022); Real Clear Politics, https://www.realclearpolitics.com/ (last visited 8:00 a.m. March 21, 2022).

[3] New Hampshire Department of Health and Human Services, COVID-19, https://www.nh.gov/covid19/ (last visited 8:00 a.m. March 21, 2022); Real Clear Politics, https://www.realclearpolitics.com/ (last visited 8:00 a.m. March 21, 2022).

[4] Real Clear Politics, https://www.realclearpolitics.com/ (last visited 8:00 a.m. March 21, 2022).

health of all hearing participants, including the public, is a weighty and substantial interest that would likely be prejudiced if the court did not impose this partial closure.  See United States v. Smith, 426 F.3d 567, 572-73 (2d Cir. 2005) (finding that U.S. Marshal's policy after September 11th of requiring unknown visitors to court to produce photo identification constituted partial closure of courtroom that was justified by substantial interest of promoting security and preventing terrorism).

B. **Second, I find that this partial closure of court proceedings is narrowly-tailored to protect public health and safety and is less restrictive than the court's current in-court hearing protocols.**

The court's current protocols allow for 15 individuals (including the judge, court staff, defendant, and attorneys) to be inside the courtroom during a hearing.  Once the number of individuals reaches 15, the courtroom is closed to further in-person attendees.  The court's protocols permit a presiding judge to allow 15 additional individuals into an "overflow" courtroom to watch the proceeding on a large screen.

I find that providing for public access via a remote video connection after the applicable cap on in-person attendees has been reached better serves the goals of public access than an overflow courtroom.  I so find for the following reasons: an unlimited number of people can watch the hearing via video, including those who cannot enter the courthouse due to the strict entrance protocols (e.g., a person who has experienced a sore throat within the previous ten days), see Standing Order 21-

14 (Apr. 8, 2021). In addition, use of an overflow courtroom requires persons to enter the courthouse only to watch the proceeding on a screen. Where the virus that causes COVID-19 is highly contagious, and the risks of transmission increase as more people are allowed into the courthouse, I find that making the hearing accessible via remote video to all, rather than accessible via in-court video to only some, properly balances the public's right of access and the safety of everyone in the courthouse during this pandemic. Allowing the public to observe these proceedings via video allows an <u>unlimited</u> number of members of the public to observe the proceedings while, at the same time, protects the health of all involved by limiting the potential exposure of the public, parties, security officials and court staff to COVID-19.

      I find that providing public access to this proceeding via video is the least restrictive means of protecting the substantial interest of public health and safety. <u>See</u> United States v. Alimehmeti, 284 F. Supp. 3d 477, 490 (S.D.N.Y. 2018) (granting partial closure of courtroom to protect identity of undercover agents: courtroom was closed to public during undercover agents' testimony but audio of testimony was live-streamed into different courtroom during partial closure and transcripts of testimony were made available to public promptly).

C. **Third, I have considered reasonable alternatives to this partial closure**.

On March 26, 2020, I conducted an in-person change of plea hearing in accordance with the court's protocols in place at that time. Between that date and July 15, 2020, the court held no in-court hearings due to the pandemic. Since these early dates of the pandemic, however, the court has held in-court hearings in criminal cases where a defendant is legally entitled to an in-court hearing and does not consent to a video hearing. The court has also held a limited number of jury trials in criminal cases under very strict protocols. Even still, the public safety concerns require the court limit the number of people permitted inside a courtroom at one time. For an in-court hearing, the court currently limits the number of individuals to a total of 15 people. See Standing Order 20-27.

Where a litigant requests an in-court hearing, the risk to public safety increases as more people are permitted to come into the courthouse. And, for the reasons explained above, the court does not find an overflow courtroom addresses either public safety or public access as effectively as video or telephonic access. Thus, in those limited instances where a hearing occurs in-person and in the courtroom, and more than fifteen persons seek to attend, I will grant public access to the hearing via video, or—where video is unavailable or not feasible—via telephone to maximize both public safety and public access.

## IV.     Conclusion

In sum, the court finds that in this case a partial closure of court proceedings is necessary in that, once the courtroom reaches capacity, public access to this in-court hearing will occur via video or—if video is unavailable— via telephone.  This partial closure is justified by the substantial interest in protecting public health and safety from the spread of COVID-19 and is narrowly tailored to protect that interest.

Any member of the public wishing to access this in-court hearing remotely should contact the Clerk's Office (603-225-1423) in advance of the hearing to obtain the access information.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

Date: March 21, 2022

cc:     Counsel of Record.