**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 7-12-2022**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                 *
UNITED STATES OF AMERICA         *
                                 *   21-cr-99-01-LM
          v.                     *   March 21, 2022
                                 *   2:15 p.m.
     MICHAEL CLEMENCE            *
                                 *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY

APPEARANCES:

For the Government:        Kasey A. Weiland, AUSA
                           U.S. Attorney's Office


For the Defendant:         John P. Newman, Esq.
                           Newman Law Office, PLLC


Probation:                 Jennafer McNutt


Court Reporter:            Susan M. Bateman, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

```
1                    P R O C E E D I N G S
2              THE CLERK:  This Court is now in session and has
3    for consideration a sentencing in the matter of the United
4    States versus Michael Clemence, criminal case
5    number 21-cr-99-LM.
6              THE COURT:  All right.  Let me just get my papers
7    in order here.
8              And let me just explain that our court has gone to
9    mask optional.  You can see I'm still wearing a mask, and
10   that's because I traveled this weekend and I'm not -- and I
11   did test this morning and I tested negative, but I'm still
12   wearing a mask just to protect other people at this point,
13   people in my chambers and in the courtroom.
14             And with incarcerated defendants we've asked them
15   to stay masked or, if they want to remove a mask, to have a
16   rapid test, which we would give you, Mr. Clemence, if you
17   wanted to remove your mask.
18             So I just want to make sure you know that if you
19   wanted to take that mask off, I would let you do that.  We
20   just would do a rapid test, and the court would provide it,
21   but my understanding is you're fine wearing a mask?
22             THE DEFENDANT:  Yes, your Honor.
23             THE COURT:  Okay.  All right.
24             And everybody else is just mask optional.  All
25   right.  Okay.
```

1          Attorney Weiland, tell me about the Crime Victims'

2  Rights Act and the government's compliance with that statute.

3          MS. WEILAND:  Yes, your Honor.

4          The government has been in contact with victims and

5  representatives of the victims in this case.

6          I do want to alert the Court that I made a last

7  minute filing related to restitution which shortly thereafter

8  counsel for the defendant and myself reached an agreement, and

9  so I just wanted to alert the Court that the issue regarding

10  restitution and the particular victim to which no agreement

11  had been reached at the time of that filing there is now an

12  agreement, and so there will not be a need for a separate

13  hearing on the matter of restitution.

14          THE COURT:  Okay.  And is the restitution a total

15  amount of 52,000?

16          MS. WEILAND:  That's correct, your Honor.

17          THE COURT:  What probation has assessed.  Okay.

18  All right.

19          Okay.  All right.  And before we get -- let me ask

20  -- start by asking, Attorney Newman, have you had an

21  opportunity to review the presentence report and any revisions

22  to it with your client?

23          MR. NEWMAN:  Yes, your Honor, I have.

24          THE COURT:  Do you have any objections to the

25  revised presentence report?

4

1              MR. NEWMAN:  We do not have any objections to the

2     report, no.

3              THE COURT:  Okay.  It was revised -- originally

4     prepared on February 11th of 2022 and revised March 7th of

5     2022.

6              No objections then?

7              MR. NEWMAN:  No, your Honor.

8              We do at the appropriate time have some issues with

9     the proposed conditions of supervision.

10             THE COURT:  Okay.  All right.  We'll go right into

11    that.

12             Do you have any objections to the revised

13    presentence report?

14             MS. WEILAND:  I don't, your Honor.  Thank you.

15             THE COURT:  Okay.  All right.  So let's just go to

16    those conditions of supervision.

17             Let me just state for the record that the revised

18    presentence report is placed in the record under seal.  If an

19    appeal is taken, counsel on appeal shall have access to it.

20             Okay.  I have the proposed conditions in front of

21    me.  Go ahead, Attorney Newman.

22             MR. NEWMAN:  Thank you, your Honor.

23             Regarding the special conditions is where we have

24    some issues.

25             Condition No. 1 under Substance Abuse Treatment

1    Testing and Abstinence, we object to that.

2            Mr. Clemence has been identified as a low risk for

3    substance abuse, and condition No. 1 says he must

4    participate -- must participate in a substance abuse use

5    treatment program and follow the rules and regulations of that

6    program.  The probation officer will supervise his

7    participation in the program, and he must pay for the cost of

8    treatment to the extent he's able.

9            This is not necessary as he is a low risk

10   individual.  He does not use drugs.  He's not somebody who

11   should be a concern and would ask that the Court strike that.

12           The government is in agreement with that request.

13   Probation is not and would want to address the Court on that.

14           With respect to condition No. 3, the exact same

15   argument.  That he must not use or possess alcohol at all.  He

16   doesn't have an alcohol issue, your Honor, and an outright ban

17   on alcohol seems extreme to us.  If the Court is not inclined

18   to strike it entirely, at least leave it at the discretion of

19   his supervising officer.

20           THE COURT:  All right.  So you would suggest you

21   must not use or possess alcohol without the preapproval of

22   your supervising officer if I were to agree to amend it?

23           MR. NEWMAN:  Yes, your Honor.

24           THE COURT:  Okay.  I do remember that there was

25   some mention of alcohol use, and I think it was his ex-wife

1    who was saying that this became an issue in their marriage,

2    that alcohol use was a problem.

3                MR. NEWMAN:  I would have to refresh my memory on

4    that, your Honor.  I don't recall that.

5                THE COURT:  Okay.  I read that somewhere.  I can

6    see if I can locate it.

7                What's the government's position on the alcohol

8    provision?

9                MS. WEILAND:  Your Honor, I would submit that the

10   investigation did not reveal any information to indicate that

11   alcohol or drugs were a contributing factor, and so I would

12   agree that the investigation didn't necessarily reflect that

13   these would be necessary in the instant case.  I understand

14   that they are standard conditions from probation.

15               THE COURT:  Okay.  I think -- let me see.

16               MR. NEWMAN:  It's paragraph 63, your Honor, is

17   where there's a statement from his wife.

18               THE COURT:  Yes.

19               MR. NEWMAN:  The last sentence there says:  The

20   defendant's wife indicated the defendant's alcohol consumption

21   previously led to marital disputes, but she declined to offer

22   additional information.

23               THE COURT:  And am I permitted to delegate to the

24   probation officer, his supervising officer, preapproval to use

25   alcohol?  That's something I just want to be clear on.  I know

1     there are limits on what I can delegate.

2              MS. MCNUTT:  We would recommend that it says

3     alcohol prohibition.  We would like for it to be -- I don't

4     think I've seen it upon approval by the probation officer.  I

5     think we would just request that it not be approved.

6              THE COURT:  All right.  Well, I tend to agree on

7     No. 1.  I didn't read anything about his drug use.  In fact,

8     that's one of the issues that certainly mitigates here, that

9     he doesn't have a drug use or a substance abuse history.  So

10    I'm going to strike condition No. 1 completely.

11             And then I guess you don't have any problem with

12    drug testing because you're not a drug user.  So you don't

13    object to that?

14             MR. NEWMAN:  Correct.

15             THE COURT:  Okay.  Substance abuse.  Once weekly

16    but never to intoxication.  That's what your client is

17    admitting by way of alcohol use, but his ex-wife has said that

18    there were some marital disputes around alcohol consumption

19    but she did not want to go into greater detail.

20             And the government doesn't object to removing that

21    condition?

22             MS. WEILAND:  Correct, your Honor.  I think without

23    additional information regarding paragraph 63 -- I mean, I

24    think it's fair to say that different people can have

25    different opinions as to what an acceptable amount of alcohol

1  consumption is or isn't.  So without more information about,

2  you know, the background of the ex-wife's statements, I think

3  it's a little difficult to read into that meaning that the

4  defendant had an alcohol problem.

5           THE COURT:  Okay.

6           MS. WEILAND:  So I would submit to the Court on

7  that, your Honor.

8           THE COURT:  Okay.  All right.  I'm going to strike

9  1 and 3.

10          Okay.  And no objection to 2 and 4?

11          MR. NEWMAN:  Correct, your Honor.

12          THE COURT:  Okay.

13          MR. NEWMAN:  We also --

14          THE COURT:  Any -- go ahead.

15          MR. NEWMAN:  Thank you.

16          We also have an objection to No. 6, that he must

17  not incur new credit charges or open additional lines of

18  credit without the approval of the probation officer, and the

19  reason for that is that he's been very careful and there are

20  no financial issues in his history and this case doesn't

21  indicate any either.

22          The probation office indicated to me before the

23  hearing that because there will be a restitution order they

24  wanted a probation officer to approve any additional expenses

25  or taking on credit issues, taking on debt.  She gave the

1   example of he shouldn't be buying a new car if he still has

2   outstanding restitution.

3            We understand that, but still the position is that

4   because there's no indication of any sort of problems with

5   financial management that it should be stricken.

6            THE COURT:  And what's your position, Attorney

7   Weiland?

8            MS. WEILAND:  Well, frankly, your Honor, I wasn't

9   aware of probation's rationale for that condition.  I

10  understand and it makes sense in light of the explanation.

11           Where I've typically seen this condition imposed is

12  in cases involving some type of financial fraud or something

13  along those lines, a white collar crime.

14           I would simply say that I don't disagree with

15  anything defense counsel has said in terms of the necessity as

16  it relates to this particular defendant, and financial

17  management doesn't seem to be an issue.  So again I would -- I

18  don't disagree with anything defense counsel has said.  I

19  would submit to the Court on that.

20           THE COURT:  Okay.  Well, then I will strike

21  condition 6 based on the arguments of counsel and your lack of

22  any objection really to it.

23           And, you're right, there's no evidence in the

24  record of any history of sort of financial misdeeds of any

25  sort.

1          I get the rationale for it.  I understand why

2     probation wants it.  But, ultimately, without something more

3     and there being no objection from the government, I'm going to

4     strike it.

5          Go ahead.

6          MR. NEWMAN:  Finally, your Honor, condition 15

7     under Computer and Internet Restrictions sets forth a complete

8     ban on possessing and using computers or other electronic

9     communications or data storage devices.

10          And you'll see 16 through 19 set forth the

11     conditions on the use of those computer and other devices.  So

12     we jointly -- the government and I recommend that just a

13     phrase be added to the beginning of paragraph 15 which says:

14     Except as approved by probation, you must not possess or use

15     computers, et cetera.

16          THE COURT:  Okay.  And you agree with that?

17          MS. WEILAND:  Yes, your Honor.

18          THE COURT:  Okay.  I'll make that amendment then to

19     condition 15.

20          All right.  Anything else about the proposed

21     conditions of supervision?

22          MR. NEWMAN:  No, your Honor.  Thank you.

23          THE COURT:  Okay.  All right.

24          And then the drug testing condition is imposed, and

25     you're not objecting -- that's a standard condition, but I

```
1    certainly can suspend that.  But you don't have a problem with
2    it.  He's not a drug user.  He's going to test negative.  It's
3    not one you're concerned with, right?
4              MR. NEWMAN:  We're fine with that.
5              THE COURT:  Okay.  All right.
6              Now, before we get started -- the change of plea
7    hearing, was that via video?
8              MS. WEILAND:  I believe it was, your Honor, yes.
9              THE COURT:  Then I would need to make a finding
10   with respect to the images before we even get started on the
11   sentencing portion of the hearing.
12             In the change of plea hearing, Mr. Clemence, it was
13   done via video, and part of my findings in order to formally
14   accept your change of plea is that I need to make a finding
15   that the facts alleged support the crime that you are pleading
16   guilty to.  And the government in a case like this will show
17   the Court exemplar images and, ultimately, I'm required to
18   make a finding that those images constitute child pornography
19   as defined by the statute.  And so we can't -- we didn't do it
20   via video and we haven't done it before this hearing, so it's
21   really something I have to do before I even really begin any
22   further in any depth in this sentencing hearing.
23             So if you can give me those images and let me look
24   at those.
25             (Images are given to the deputy clerk by Attorney
```

1  Weiland and given to the Court.)

2           (Court reviews images.)

3           THE COURT:  All right.  I'm looking at Government's

4  Exhibit 1, and I make the necessary finding, the finding that,

5  frankly, supports your change of plea and a finding that the

6  facts as alleged make out the elements, and one of those being

7  that this constitutes child pornography.

8           Okay.  Now, let's talk about the guideline range at

9  least pursuant to the presentence report.

10          There are no objections to the presentence report

11 by either defense or the government, which brings us to a

12 total offense level of 28, an applicable Criminal History

13 Category of I, which yields an advisory guideline sentencing

14 range of 78 to 97 months.

15          Everybody agree that is the guideline range, 78 to

16 97 months?

17          MS. WEILAND:  Yes, your Honor.

18          MR. NEWMAN:  Yes, your Honor.

19          THE COURT:  Okay.  All right.

20          And there is a motion for forfeiture, assented to

21 motion for forfeiture, and I will make that attached order of

22 forfeiture a part of my judgment.

23          Is everybody in agreement on that?

24          MS. WEILAND:  Yes, your Honor.  Thank you.

25          MR. NEWMAN:  Yes, your Honor.

1          THE COURT:  All right.

2          And the parties are agreeing to what, frankly, we

3     typically agree in these cases is that the enhancement for

4     computer use really is, frankly, meaningless in these cases

5     because all cases involve this particular enhancement, and so

6     the government and the defendant have agreed to jointly

7     request a two level downward variance to account for that

8     which gives a new range, frankly, of 63 to 78 months, but,

9     ultimately, the parties are in agreement to go down two levels

10    because of the computer use enhancement.

11         Is that right?

12         MR. NEWMAN:  Yes, your Honor.

13         MS. WEILAND:  Yes, your Honor.

14         THE COURT:  Okay.  Now, let me ask a question about

15    that because that is the typical case in every typical case I

16    have agreed to go down two levels, but here there really isn't

17    an enhancement unless I'm wrong, and somebody tell me that I

18    am, for the fact that this was really a dark web -- that a lot

19    of his computer use was done in encrypted end-to-end chatting

20    applications and on the computer was using the dark web as a

21    source.  There's really no enhancement that applies there, and

22    so I'm wondering why the computer use enhancement wouldn't

23    apply here for that reason.  I can see why technically in most

24    cases it doesn't really apply, but Attorney Weiland.

25         MS. WEILAND:  Sure.  I'm happy to address that,

1    your Honor.

2            So I guess where I would start with regard to that

3    two level downward variance and the use of computer is I

4    absolutely agree that it has become an enhancement that

5    applies in virtually all, if not all, cases.

6            And so the government has in appropriate cases

7    either jointly recommended or agreed to recommend that two

8    level downward variance.

9            What I personally look for in any given case in

10   determining whether such a recommendation is appropriate is if

11   there is more than what I would consider baseline use of

12   computer by which I mean -- I think what we see in this case

13   is fairly typical of what I would call baseline use of

14   computer; meaning that the computer is both the receptacle

15   upon which the child pornography is possessed and also the

16   means by which it was obtained.

17           Your Honor does raise I think a fair point

18   regarding the dark web.  That is a factor that I think is

19   important to consider, and I will actually address that in the

20   context of the content factor that's set forth in the

21   sentencing memo.  That justification is part of the reason

22   that the government is recommending the high end of this new

23   adjusted range, the 63 to 78 months.  The government is

24   recommending a 78-month sentence.

25           But what I typically look to, your Honor, to

1    determine whether there was use of computer plus is things

2    like was the defendant engaged in online communications with

3    others regarding child pornography, was he engaged in online

4    communications directly with minors of a sexual nature, was he

5    engaged in online communications about actual sexual contact

6    with children or discussing a potential meeting with a child

7    for a sexual reason.

8                So those are sort of the what I would consider use

9    of computer plus.  It's that online engagement.  That extra

10   level of interaction with other like-minded people in an

11   Internet community.

12               In this case we really don't have any evidence of

13   that, and the reason is because, as your Honor has pointed

14   out, he was using a lot of these techniques and technologies

15   that allow for more anonymous online activity.  And so really

16   it's sort of an unknown factor in this case, but certainly

17   there were no chats that were found on any of the defendant's

18   devices that were directly related to the sexual exploitation

19   of children.

20               I would distinguish there were some chats that were

21   located on his devices that pertained to spanking, but those

22   were not in forums that were sexual in nature at all.  Those

23   appeared to be discussions of spanking as a form of discipline

24   and not in any sort of sexual context.

25               So those are the factors that I look at when

1  considering whether it's appropriate to make that

2  recommendation.  And in this case given that basically what I

3  saw was what I would consider to be the sort of baseline use

4  of computer, meaning we know that he obtained these images

5  from the Internet and that they were contained on a computer,

6  apart from that -- there's really no additional evidence of

7  any use of a computer in the online sexual exploitation of

8  children beyond that.

9          THE COURT:  Okay.  And how was it -- I know that

10  the agents came to learn that there was a person at that IP

11  address who was using the dark web.  How was the dark web

12  being used in this case?

13          MS. WEILAND:  So the defendant was accessing a

14  known dark website, and that activity, that accessing of that

15  website, was associated with an IP address that resolved back

16  to the defendant's residence.

17          THE COURT:  Okay.

18          MS. WEILAND:  It basically just showed that a

19  device within his home was connected to that website.

20          THE COURT:  Okay.  All right.

21          But, ultimately, the images here, at issue here

22  were on his -- just on the devices on his computer, not part

23  of any dark web, or do you know that?

24          MS. WEILAND:  I can't confirm whether any

25  particular image that was found on any of his devices is

1    traced back directly to that initial activity that was the

2    source of that tip, but what I can tell you is that the charge

3    relates only to images that were found on devices that were

4    possessed by the defendant.  They were found in his home.

5                    THE COURT:  Okay.

6                    Would you like to state anything further on that

7    question that I have about the computer use enhancement?

8                    MR. NEWMAN:  No, your Honor.  I have nothing

9    further to add to what the government stated.

10                   THE COURT:  Okay.  All right.

11                   I have read everything that you filed, both of you,

12   and everything in the presentence report, and I read all the

13   attachments to your memorandum, but I am happy to hear

14   arguments of counsel.

15                   I know the government is seeking a 78-month

16   sentence.

17                   MS. WEILAND:  Yes, your Honor.

18                   THE COURT:  The high end of the newer range.

19                   MS. WEILAND:  Yes, your Honor.

20                   THE COURT:  And you're seeking 24 months and ten

21   years of supervised release.

22                   MR. NEWMAN:  That's right, your Honor.

23                   THE COURT:  Okay.  So you both have a joint

24   variance at the beginning at the top, and then you're asking

25   for a variance to 24 months down from the low end of 63.  I'm

1   happy to hear from counsel in whatever order.

2           If you would like to go first, Attorney Newman, I'm

3   happy to hear you.

4           MR. NEWMAN:  Sure.  I'll go first.  Thank you, your

5   Honor.

6           At the appropriate time Mr. Clemence would like to

7   address the Court as well.

8           THE COURT:  Okay.  I'll let him have the last word.

9   How about that?

10          MR. NEWMAN:  Thank you.

11          Your Honor, we are asking, as you've indicated, for

12  a sentence of 24 months followed by ten years of supervised

13  release.  This is a sentence that's sufficient, but not more

14  than necessary, to accomplish the goals set forth in 18 U.S.C.

15  3553(a).

16          And the Court in making this determination should

17  consider three or four issues.  First is the remorse that Mr.

18  Clemence has shown and will show, his family and friend

19  support, his amenability to treatment, and his low risk of

20  recidivism.

21          With respect to remorse, your Honor, Mr. Clemence's

22  remorse, I think when you hear from him, it is palpable and it

23  is sincere.  He read all the victim impact statements and he

24  took them to heart.  Reading those statements has made him

25  realize the scope and the deep impact of his crime.  That was

1    not something that was clear to him before he was able to read

2    those, before he was arrested, and that's an important factor

3    for your Honor to consider.

4           The second issue is his family and friend support.

5    Mr. Clemence's parents, Terry Kiernan and Kent Clemence, are

6    here in support of him sitting behind him here today as well

7    as family friends Sandra and Loren Obrey.  You've got letters

8    from all of those people in Exhibit A.

9           You will also see letters from Zachary Platt, from

10   Alex Reyes, and from Elijah and John Obrey, the children of

11   Sandra and Loren.

12          You also have two people from Mr. Clemence's church

13   here in support, the pastor and a member of the church.

14          These people are willing to help him reenter

15   society in any way they can, and there are other family and

16   friends who stand ready to support him.

17          He has made connections for employment upon his

18   release.  He will -- he hopes to start a business doing energy

19   audits.  He's made progress in setting up that business upon

20   his release.

21          A final note regarding his family, your Honor, is

22   that Mr. Clemence's father, Kent Clemence, who is here today,

23   according to his doctors has only about a 30 to 40 percent

24   chance of living another seven years.  He's had a brain tumor

25   removed.  He's had a couple of strokes.  And Mr. Clemence

1    would like to be physically present for him during the final

2    stages during the time he has left here with us.

3              The other factor -- one other factor I wanted to

4    highlight, your Honor, is Mr. Clemence's amenability to

5    treatment.

6              There is no question that Mr. Clemence is ready for

7    treatment.  The Court is aware of his history, the abuse he

8    suffered as a child that's documented in Derek Edge's report

9    filed under seal as Exhibit B, and how those two events may

10   have affected and informed his subsequent viewing of child

11   pornography in this case.

12             Before he was arrested Mr. Clemence was

13   tremendously conflicted and ashamed about his child

14   pornography use.  He knew it was wrong.  He knew he should not

15   be doing it.  He would go through periods of non-use, but he

16   would come back to it.

17             In his view and his mindset at the time there was

18   no one he could talk to about this.  He had nowhere to go.  He

19   was too ashamed and tormented to seek help for this.  There

20   was no one he could turn to.

21             Now that his child pornography use is out in the

22   open, he can do something about it and he wants to do

23   something about it.

24             During the risk evaluation Derek Edge noted that he

25   did not try to minimize or deny his interest and made no

1   attempt to justify his actions.  Furthermore, he has a

2   positive attitude towards treatment and there is every

3   indication that he will do the work needed to change his

4   behavior.

5          The review of the victim impact statements further

6   motivated Mr. Clemence to make sure he never engages in this

7   conduct again.

8          Finally, your Honor, I want to touch on the issue

9   of the low risk of recidivism.

10         Mr. Clemence has been identified by Derek Edge and

11  it certainly seems clear that he is an Internet only offender.

12  Those offenders have very low recidivism rates; 4.6 percent

13  over a one and a half to six year range and with only 2

14  percent committing a contact offense.

15         He is, Derek Edge has identified, a fantasy driven

16  rather than a contact driven offender.  Thus, his risk for a

17  contact offense is very low.

18         The government in their memo and I expect here

19  today will make two points about the recidivism issue with

20  respect to Mr. Clemence.

21         First, they indicated that Mr. Clemence was viewing

22  child pornography since high school and that is in Derek

23  Edge's report, but that is not accurate.

24         Mr. Clemence was reading stories about bondage and

25  issues like that but not viewing child pornography when he was

1    in high school, and those are the materials that his mother

2    found and that he talked about and indicated to Derek Edge.

3    It was not child pornography.  Child pornography did not come

4    until later.

5         Second, the government makes much of the Internet

6    sex screening tool that was conducted as part of the

7    evaluation as a predictor of recidivism, but you will see in

8    the report, and it's italicized, that Mr. Edge notes that that

9    tool is not intended to assess sexual offense recidivism.

10   Rather, it is used in the evaluation for a later discussion

11   regarding the function of the Internet in Mr. Clemence's life

12   and to guide recommendation about future Internet use.

13        So the government in its memo is using it for a

14   purpose that it was not intended for.

15        Derek Edge also says regarding this tool:  He's at

16   a higher risk to have Internet sexual behavior have some

17   negative future impact on his life without intervention.

18        But he's got intervention.  There will be ten years

19   of supervision.  There will be a period of incarceration.

20        So, yes, he's at a higher risk for Internet use and

21   negative use thereof, but he intends to get the treatment.  He

22   intends to take care of this issue.

23        We're asking the Court to sentence him to 24

24   months.  We understand 24 months is lower than one might

25   expect for a case like this, but this is an unusual case.

1    It's warranted in this case.  There will be ten years of

2    supervised release afterwards.

3            Mr. Clemence, as the Court knows, has no record

4    whatsoever.  He's never been in custody before.  This has been

5    a very difficult time for him these past several months to be

6    in custody given these charges.  He's been in the protective

7    custody unit but still he's experienced some violence towards

8    himself during that time.

9            A sentence will recognize -- a sentence of 24

10   months will recognize his low risk, his remorse, and his

11   commitment to treatment.

12           Finally, your Honor, we request a recommendation

13   that he be placed at FMC Devens for treatment purposes.

14           Thank you, your Honor.

15           THE COURT:  Thank you.

16           Attorney Weiland.

17           MS. WEILAND:  Thank you, your Honor.

18           May I address the Court from counsel table?

19           THE COURT:  Sure.  That's fine.

20           MS. WEILAND:  Your Honor, as I previously

21   mentioned, the government is seeking a sentence in this case

22   of 78 months.

23           The defendant's offense in this case is a serious

24   one, and I think that we need only look to the nature of the

25   images that are before the Court to recognize how very serious

1    it is.

2          This is an offense that involved the possession of

3    I believe it was over 1,300 images depicting known victims,

4    and that number does not take into account additional images

5    that may have been present depicting unknown or unidentified

6    victims.

7          The content of the collection focused heavily on

8    images of bondage and spanking of prepubescent boys.  Your

9    Honor has seen some representative examples that reflect the

10    content and the character of the collection, and I would

11    submit that given the nature of those images that that is an

12    important factor for the Court to consider in taking into

13    account the nature and the circumstances of the offense.

14          I would also submit, your Honor, that the amount of

15    time that the offense has been ongoing -- although it's made a

16    little unclear by some of the statements made by defense

17    counsel today, what we do know is that at least as far back as

18    2019 the defendant's ex-wife discovered at that time thousands

19    of images of apparent child pornography on his computer and

20    actually confronted the defendant about it.

21          I think it's important to note that the defendant

22    was undeterred after that discovery and after that

23    confrontation and likewise after being confronted at his home

24    by law enforcement.  The defendant reported that his viewing

25    of that material dramatically increased after the visit to his

1    home by federal agents.

2           So while it's a little bit unclear.  I don't know

3    if that was just a misunderstanding of Mr. Edge.  He suggested

4    that this conduct had been going on since the defendant was --

5    before the defendant finished high school.  It appears he may

6    not have been viewing the material that long, but certainly

7    that interest was there given the nature of the things he

8    acknowledges he was looking at at that time.

9           So I would submit that that, together with some of

10   the findings by Dr. Edge, do support a finding that the

11   defendant is a higher risk to recidivate.

12          I do take issue with the suggestion that I used Mr.

13   Edge's findings out of context.  I believe I quoted directly

14   from his report in my sentencing memorandum when Dr. Edge, Mr.

15   Edge, I'm not sure if he's a doctor, stated that his answers

16   on that assessment placed him in the highest risk category.

17   That was taken directly from Dr. Edge's report, and I believe

18   I was also careful to point out that the report did not offer

19   specific recidivist estimates but merely discussed what are

20   known to be certain common risk factors.

21          We've already talked about the use of computer

22   enhancement and the reason why that's not necessarily a useful

23   tool in distinguishing a more culpable offender from a less

24   culpable one, but there are some factors that the sentencing

25   commission recommends the Court consider.  I've laid those out

1    in my sentencing memorandum.  The Court has mentioned one

2    today which is the use of sophisticated means to avoid

3    detection, and as the Court is well aware, that's certainly

4    present in this case both by the defendant's use of the dark

5    web to obtain this material but also with certain applications

6    that were installed on the device.

7         Those all go to the content factor that is one of

8    the three factors identified by the sentencing commission as

9    being relevant for the Court's consideration in fashioning an

10   appropriate sentence.

11        The second factor is community which I think I also

12   sort of talked about in the context of the use of computer

13   enhancement.  Frankly, the investigation did not yield any

14   direct evidence that the defendant was engaged in an online

15   community that was devoted to the sexual exploitation of

16   children.

17        The reason I characterized that as a neutral factor

18   though is because of these sort of anti-detection methods that

19   the defendant had employed.  And so really this is more of an

20   unknown factor than one that I would suggest weighs either --

21   you know, in terms of aggravating or mitigating, I would

22   suggest that it's neutral.

23        Finally, with respect to contact, your Honor, I

24   want to be very clear that the investigation did not yield any

25   evidence of any contact offenses by the defendant against any

1    minor.

2                With that being said, your Honor, there were some

3    concerning discoveries as investigators reviewed the contents

4    of Mr. Clemence's devices.

5                One of those that I know the Court is aware of is a

6    photograph that depicts the defendant's three-year-old son

7    with large red welts and markings on his bare buttocks.

8                The other images depict Mr. Clemence apparently on

9    a cruise with some teenaged boys that he cared for as what I

10   believe was essentially in a foster parent role, a residential

11   foster situation.

12               These images do not depict child pornography, but I

13   don't think it's unreasonable for the Court to consider the

14   conduct that is reflected in those images in light of the

15   nature and the character of the defendant's child pornography

16   collection.  And I'm not asking the Court to make more of that

17   than what it is, but I do think it is concerning.  I'll leave

18   it at that.

19               So the other note that I'll make which was

20   mentioned in my sentencing memorandum is simply about some of

21   these very low risk estimates provided in Mr. Edge's report.

22               As I read the report, I understood those to be

23   referring to Internet offenders generally and not to Mr.

24   Clemence specifically.  My understanding is that there were

25   some indicators based on the assessments that were done by Mr.

1    Edge that would tend to suggest that Mr. Clemence is not in

2    that very low risk of re-offending.

3              For all those reasons, your Honor, the government

4    is recommending a sentence of 78 months to be followed by ten

5    years supervised release.

6              Thank you, your Honor.

7              THE COURT:  Mr. Clemence, you have a right to say

8    something to me before I decide on the sentence.  You don't

9    have to exercise that right and I would not hold it against

10   you if you decided not to speak, but I want to make sure you

11   know it is your right.  And if you would like to say

12   something, now is the time.

13             THE DEFENDANT:  I would.  Thank you, your Honor.

14             THE COURT:  Go ahead.

15             THE DEFENDANT:  Your Honor, I'm addressing the

16   Court today with words that are inadequate of a struggle in

17   attempting to express what's in my heart concerning my crime

18   and its consequences.

19             I have spent countless days and hours since June

20   7th when I was arrested struggling to process through the

21   fullness of my actions and the effects that they have had not

22   only on those closest to me, such as my family and friends,

23   but far more indelibly on those whom I have never met but have

24   victimized in my consumption of child pornography.

25             In the opening months of my incarceration, and

1    indeed the days before when I was cut off from my wife and
2    children, I was struck to the core with the depths of the
3    reality that I have irrevocably altered the course of my
4    family's life.
5            My children will never have the opportunity to grow
6    up with both mother and father joined together in parenthood
7    and marriage.  They will lose out on the experience that only
8    a father can give them.
9            My marriage is shattered as we are currently going
10   through a divorce, and I am struggling to find some way even
11   to have supervised contact with my children moving forward.
12           As you're no doubt aware from the testimony of
13   those who know me best, my whole life was built around my wife
14   and children and this new reality has hollowed me out as a
15   person.
16           Even more the accusation from the prosecution that
17   I in any way looked at my own son, Ethan, with the same sort
18   of depravity that I had when looking at other children being
19   abused is very upsetting.  I understand why it needed to be
20   investigated, I can understand why the suspicion is there, but
21   I have never looked at my son or my daughter in that way.  I
22   have never contemplated or was tempted to do any of that with
23   either of my children.
24           Yes, my wife and I both did employ spanking as a
25   disciplinary method in raising our children.  And, yes, I did

1    take a picture to record the one time that I felt that I had

2    used more force on my son that I wanted to which resulted in

3    marks that were in excess of what I had intended.

4          But the reality is I have had nearly four years of

5    unlimited access to my son and nearly two years with my

6    daughter.  I have spanked my son on more than that one

7    occasion in the same practice that my wife uses as well, yet

8    there are no other pictures or videos of these events.  It is

9    not something I wish to record for any other reason than to

10   warn myself of how far not to go, nor something that I have

11   shared with anyone.

12         I deeply love my children and have only worked

13   towards their benefit.  And if you were to interview any of

14   our family and friends, including I think even my wife, you

15   would find that they would all tell you that for the years

16   that I was with them as their father, I took on the majority

17   of the parenting roles in putting them to bed, waking up with

18   them in the middle of the night, getting them up and ready for

19   school in the morning, taking them to daycare, and picking

20   them up.  I engaged at every level with my children in reading

21   to them, teaching them songs of our faith, as well as

22   catechizing them in the teachings of our faith, taking them on

23   walks, playing with them, and much more.

24         I have not been a perfect father and I certainly

25   have many regrets, but I have been devoted to them and I've

1    never sexually abused my children and I never would.

2           In almost all areas of my life I have put my family

3    first ahead of my own wants and desires, and I will continue

4    to do so for the rest of my life in whatever capacity I'm able

5    to.

6           As the weeks moved on in my incarceration at

7    Strafford County, I've also reflected on the trauma and

8    devastation experienced by the victims of the content that I

9    have consumed.  And, indeed, I've come to reflect on the

10   victims of abuse in general and recognize with great horror

11   the reality that my actions have far-reaching consequences

12   beyond even what I personally have engaged in because the very

13   consumption of child pornography establishes and creates

14   demand for more child pornography to be produced and

15   disseminated.

16          When I received and read the victim impact

17   statements, I came to more fully understand the effects that

18   continued exploitation has on the victims of abuse and their

19   families.  This is a consequence in particular that I

20   ignorantly had never even recognized before.

21          Living with the reality that people they meet in

22   public might recognize them and be aware of the darkest and

23   most private moments in their lives is such a terrifying

24   burden that no one should have to bare yet alone to be abused

25   in the first place.  There is no greater shame I carry than

1  having participated in their abuse and continued abuse through

2  that exploitation.

3          I have dishonored my family, my friends, my God,

4  and myself.  There is no excuse for what I have done, who I

5  have harmed, no explanation, no justification, so I offer none

6  of these.  It's morally reprehensible, sickening, and highly

7  disturbing to even think about it or consider it.

8          If I could, I would offer my deepest apology to the

9  victims I have impacted.  I recognize that these words likely

10 mean very little in light of the abuse that they faced and the

11 damage that continued exploitation at my hands has caused

12 them.

13         Assuredly, I am deviant in my thinking and I

14 desperately need treatment to work through the depravity of

15 thought that is the catalyst for this kind of behavior.  I say

16 this not in any way to abdicate responsibility, because it is

17 my responsibility alone for not having sought help before

18 acting out on this depravity and it is fully my responsibility

19 for having acted out in the ways that I did.

20         I say this because I want to do the hard work to

21 reduce and hopefully eliminate these depraved thoughts that I

22 have and most importantly to ensure that I never engage in

23 this kind of behavior again.  I can only do that work with the

24 help of treatment and professionals that are equipped to show

25 me the work that needs to be done and how to do it.  I believe

1  I can be successful with their help, and I'm committed to

2  being successful with the outpouring of love and support of so

3  many of my families and friends in Arizona, Texas, and even

4  here in New Hampshire.

5          Even though I cannot apologize directly to the

6  victims affected by my actions, I can apologize to my family

7  and friends for how this has affected them.

8          And I know that my words are likely hollow to the

9  ears of my wife since she has also been so deeply affected by

10  all of this not only for how I have betrayed her trust and

11  love but also with how I have put her in the position of

12  providing for and raising our children by herself for the

13  duration of my incarceration at the very least.

14          Elizabeth, you have often asked me if I had any

15  regrets in life, and I often told you that I did not like to

16  say that I had regrets because my life choices have led me to

17  you and to our children.  In truth, I do have regrets.  I

18  regret the sexual deviancy that I have, that I have never

19  sought out help for it, or acting out on it through viewing

20  pornography.

21          I could have looked at life with these things under

22  control and in complete honesty and openness with you.  I

23  would have loved my life far more than I do.  And I still

24  don't regret my time as your husband even if it was too brief,

25  and I certainly don't regret our beautiful children.  You're

1    an amazing wife, mother, and woman.  I'm grateful just to know

2    you.

3          I understand that all of this, both my actions and

4    the lies about my sexual deviancy has caused you deep hurt and

5    betrayal, and I wish above all else that I had gotten help for

6    being abused before I began to fantasize about those events

7    leading me to eventually seek out that kind of material.  That

8    in my selfishness I worried if I told anyone, I would lose you

9    and after we had Ethan and Nora I would lose them as well.  In

10   the end I lost all of you just the same.  In losing you to my

11   own actions, I have also placed a burden on all of you moving

12   forward without the family that we all should have had.  Next

13   to the shame and remorse I have for the victims I have

14   exploited, I am most ashamed and remorseful for the damages

15   that I have caused you and our children.  I can't hope to

16   atone for the harm that I have done, but to lead a life in

17   pursuing that atonement is the bare minimum I can strive for.

18          Morning and evening I spend time and prayers for

19   the mercy and grace of God to be with the victims of child

20   pornography and child abuse and God grant that they might find

21   healing and resiliency from traumas they never should have

22   experienced, traumas that were inflicted on them not only by

23   their abusers but also by the continued exploitation of others

24   like me to sustain the market for this sort of material.

25          Excuse me.  I'm sorry.

1           THE COURT:  That's okay.

2           (Witness drops glasses.)

3           THE DEFENDANT:  The mask makes it hard with

4    glasses.  I'm sorry.

5           It terrifies me that I not only have sexual

6    fantasies of me being in the role of being dominated as a

7    child but that I victimized children in the process of

8    imagining myself in their shoes.  I don't even understand the

9    part of me that thinks -- the part of myself that thinks of my

10   past abuse as a child in ways that bring about anything but

11   disgust and horror, but I understand that it is wrong and that

12   it is a broken part of me that is so distorted that I wish I

13   could rip it out and never have to deal with it again.  But

14   these demons are my own, and nothing can change the future I

15   have to face in living with them and the burden that I must

16   shoulder to overcome them.

17          My primary job for coming here is to do just that.

18   I intend to wholeheartedly throw myself into therapy and the

19   treatment necessary to learn to live with my past so that I

20   can fulfill my responsibilities to those in my life who

21   deserve a better man than I have been and a better man than I

22   am today.

23          I don't know what that man looks like or how I

24   could possibly become him, but for the sake of my son and

25   daughter and the rest of my family as well as society itself,

1    I know that I must become that man.

2           Not only have I spent my time incarcerated in

3    reflection on these things but also in planning for the

4    future.  A future of paying restitution to the victims that my

5    actions have impacted however little that might be -- however

6    little that restitution might be.

7           I want to provide for my wife and children even

8    though I've completely destroyed the possibility of a normal

9    life for them.  One of caring for my father in the last years

10   of his life and using the rest of my life to honor him by

11   being a better man, and finding other non-contact ways, such

12   as charitable giving, to help the victims of child abuse.

13          Upon release from incarceration I plan to return to

14   Arizona to live with my father for the last few years of his

15   life and to care for him while building a business to pay what

16   I owe to those I have harmed.

17          I will be surrounded by the support of my mother,

18   siblings, and other friends who are fully aware of what I have

19   done and are committed to supporting me as I continue on in

20   accountability and taking responsibility for my actions.

21          I have put together business plans both for energy

22   auditing and pool cleaning that will enable me to earn enough

23   to keep up with both my restitution as well as other

24   commitments.

25          I have established relationships with several

1    friends and family members whose businesses are a prime way to

2    network for both of these businesses which should lead to me

3    being profitable within the first few months given extremely

4    low start-up costs and support for my mother who is looking

5    for me to succeed both professionally and personally as I move

6    forward and being productive in my community and personal

7    growth.

8              I stand before you today, your Honor, as a broken

9    man ashamed of what I have done but hopeful for a future where

10   crimes like mine are never committed again.  I can't be a part

11   of preventing others from doing the things that I have done,

12   but with help I can find healing and purpose myself to never

13   participating in those behaviors again.

14             I fully acknowledge the depth of the harm that I

15   have caused, and I submit completely, without resistance to

16   your judgment, knowing to the depths of my being that I

17   deserve the fullness of the consequences that you decide to

18   give.

19             I don't ask for mercy for myself in any of your

20   consideration.  If there would be any consideration I would

21   ask for in your sentencing, it would be for my father so that

22   as his only son I might have some time left with him before

23   his passing.  As well as for my family, that I might resume

24   working so I can provide for my children and wife.  Even if

25   she will no longer be my wife at the end of all of this, just

1   the same I've made a covenant promise to care for her and our

2   children.  Though I have failed to do so by engaging in this

3   horrific crime, it doesn't change the intent I have to do so

4   for the rest of my life regardless of our legal marital

5   status.

6            Thank you for the opportunity to share my thoughts

7   and remorse.

8            THE COURT:  Thank you.

9            Anything further from anybody?

10           MS. WEILAND:  No, your Honor.

11           THE COURT:  Attorney Newman?

12           MR. NEWMAN:  No, your Honor.  Thank you.

13           THE COURT:  Okay.  All right.

14           First, I explain the sentence that I intend to

15  impose, and then I'll ask you to rise and I'll formally impose

16  sentence.  I want to make sure you can hear me.

17           I'm not going to grant the two level downward

18  variance to offset the computer use because, ultimately, I

19  think the use of the dark web and the evidence in the

20  presentence report suggests a computer use that is above and

21  beyond my typical case.  And so while both counsel have asked

22  for that, I am not going to grant that downward variance.

23           I have listened carefully to everything you said to

24  me, Mr. Clemence, everything your counsel said, the

25  government.  I read everything in the presentence report.  I

1  read both memos and the attachments.  I read carefully the

2  psych eval that was attached to your counsel's sentencing

3  memo.  Obviously, the letters on your behalf from your mom,

4  your dad, from the Obrey family.  There were four letters from

5  the Obreys.  There was a friend from your church who spoke

6  highly of you, I think it was a friend from Texas, and then a

7  family friend for whom you've really served as an older

8  brother figure as well.  I read all of those letters and I've

9  considered the sentencing factors in 18 U.S.C. Section

10  3553(a).

11          Ultimately, I'm required to consider the nature and

12  circumstances of the offense and your history and

13  characteristics, as well as all the goals of sentencing.  And,

14  ultimately, the nature and circumstances of the offense really

15  drive my sentencing decision.

16          The guideline range is 78 to 97 months.  The high

17  end of the range should I have granted a variance was 78

18  months.  The government is seeking 78 months.

19          And in light of the nature and circumstances of the

20  offense and the goals of sentencing, I find that 78 months is

21  the just and fair sentence in this case.

22          Now, let me start by saying that I have considered

23  the nature and circumstances and characteristics of you, Mr.

24  Clemence, and I reviewed the psych eval carefully, I

25  considered it, and I considered his assessment in that you are

1    an Internet only offender and the suggestion that you are at

2    low risk to reoffend.  Obviously, your lack of any criminal

3    history, you having suffered yourself sexual abuse at a young

4    age, your excellent work history, your familial support,

5    family, friends, your limited substance abuse history, and

6    your father's situation.  I'm deeply sorry for your dad and

7    his situation and where that puts you as you sit here today,

8    but the nature and circumstances of this offense, the

9    possession of such a large amount of child pornography with an

10   emphasis on bondage and prepubescent boys is very, very

11   concerning to the Court.

12          Obviously, your involvement on the dark web, it

13   makes it harder to detect and very premeditated in an attempt

14   not to be detected.

15          Now, the agents learned that your wife had

16   discovered more than 14,000 images and videos on your laptop

17   before this offense was discovered and charged, and you told

18   your wife that you must have been hacked and you destroyed the

19   hard drive and gave away the laptop -- or you wiped the hard

20   drive and gave away the laptop.  But as you said, you did not

21   seek any sort of counseling and you certainly didn't explain

22   what was really happening and going on to your wife.

23          It was your wife then who contacted the agents

24   after she found some child porn videos on some shared

25   accounts, and one of those videos was of a boy who was

1   approximately ten years old blindfolded with something over

2   his mouth and an adult male appearing to be engaged in anal

3   penetration of that young boy.

4           Now, a search of your home yielded an SD card which

5   had photos of you in a boat cabin spanking the exposed

6   buttocks of teenage males and pulling their underwear up into

7   their buttocks.  Not child pornography but strikingly similar

8   to some of those images that were found on your computer, and

9   these were boys in your care at a residential group home.

10          Forensic searches of your computer revealed that

11  you had bookmarked searches on your computer for Bad Boy Simon

12  Spanking Stories Archive and chats that showed you discussing

13  spanking and how the law makes it difficult for you to

14  discipline biblically.

15          Your wife found on your Google drive account a

16  photo of your three-year-old son naked from the waist down

17  facing a wall.  The photo revealed a red welt indicative of

18  your son having been struck with an item that you apparently

19  used to discipline them.

20          Now, many of the images on your computer focused on

21  children who were bound up and spanked.  And, ultimately, I

22  don't disbelieve you that you never sexually abused your son.

23  I credit what you just said.  However, you told me in your

24  statement that you wanted to keep that photo as an example of

25  punishment that's too harsh.  If you think that I believe that

1    that's the true reason you kept that photo in light of the

2    context of all your other photos, you're sadly mistaken, Mr.

3    Clemence.

4           When your wife located the images on your computer,

5    you should have told the truth and gotten some help.  Instead,

6    you lied to her and you continued to enjoy seeing children,

7    young boys, in bondage while they were being raped.  You were

8    enjoying chat groups about spanking and the need to inflict

9    discipline biblically.

10          And you came into this court and told me that you

11   took and saved this photo of your three-year-old son to show

12   that it was wrong.  If that is true, why not tell your wife

13   that and ask for some help?  That does not show genuine true

14   remorse.  You have said all the right things about the child

15   pornography that you possessed, but you're still willing to

16   come into court and tell me that you kept that photo of the

17   abuse on your child's buttocks, your three-year-old son's

18   buttocks, you kept a photo of that just to show that what you

19   had done was wrong.

20          That photo deserves an apology, an abject apology

21   admitting you took it and you saved it so you could perhaps

22   share it or use it in some of your biblical discipline chat

23   groups.

24          Your wife has told law enforcement that you were

25   responsible for disciplining your kids and you did it in the

1    basement.  You did it in isolation, in secret.  Why?

2          You were on the dark web.  You were using highly

3    secured messaging apps.  The extent of your involvement online

4    is not and may never be known, but the sheer number of devices

5    and media on which child porn was located indicates you were

6    an avid collector of this masochistic and sadomasochistic

7    child pornography.

8          Now, the guidelines on child pornography are widely

9    criticized and I agree with those criticisms in many cases,

10   but here the guidelines properly reflect the fair sentence or

11   certainly the fair sentence range.

12         I do believe you have remorse.  I do not think it

13   is complete remorse.  I feel as though you've been caught so

14   you are conceding guilt, but I have not heard what I would

15   characterize as genuine remorse.

16         However, I am going to sentence you to that low end

17   of that range, which is 78 months.  I'm going to impose ten

18   years of supervised release because you need to be supervised

19   with the conditions that are included in the proposed

20   conditions minus those that I struck at the beginning of the

21   hearing, and I'll impose the restitution that you have agreed

22   to and I will impose no more fine.

23         I'm not going to impose the JBTA assessment because

24   of your indigency and your high restitution, and I'm not going

25   to impose an AVAA assessment.  These are acronyms for various

1    fines that are imposed in many of these cases.

2              And I'm not going to impose interest on the

3    restitution because obviously we want the restitution to be

4    paid.

5              But, ultimately, I believe that a 78-month sentence

6    with ten years of supervised release is sufficient, but not

7    greater than necessary, to address all the factors set forth

8    in the sentencing statute.

9              I believe that that sentence reflects the

10   seriousness of this offense, promotes respect for the law,

11   provides just punishment, affords adequate deterrence and

12   protection to the public, and provides you with needed sex

13   offender counseling.

14             Had I granted the two level variance sought by

15   counsel, I would have nonetheless sentenced you to the 78

16   months, the high end of that new range.  I find that that

17   properly accounts for your history and characteristics and

18   accounts for the seriousness of the offense.

19             Those are the reasons for the sentence I intend to

20   impose.

21             Anything -- any legal objections?

22             I know, Attorney Newman, you object to the

23   sentence, you would seek a significant variance, but do you

24   object on any other legal basis?

25             MR. NEWMAN:  No other legal basis, your Honor.

```
1                    THE COURT:  Attorney Weiland?

2                    MS. WEILAND:  No objection, your Honor.

3                    THE COURT:  Okay.  All right.

4                    Mr. Clemence, would you please stand.

5                    Pursuant to the Sentencing Reform Act of 1984, and

6       having considered the sentencing factors enumerated at 18

7       U.S.C. Section 3553(a), it is the judgment of the Court that

8       the defendant, Michael A. Clemence, is hereby committed to the

9       custody of the Bureau of Prisons to be imprisoned for a term

10      of 78 months.

11                   The Court recommends the defendant be designated to

12      FMC Devens, an institution commensurate with security where

13      the defendant can participate in sex offender treatment.

14                   Upon release from imprisonment the defendant shall

15      be placed on supervised release for a term of ten years.

16                   Within 72 hours of release from the custody of the

17      Bureau of Prisons, Mr. Clemence shall report in person to the

18      district to which he is released.

19                   While under supervision you must comply, Mr.

20      Clemence, with the standard conditions that have been adopted

21      by this Court, and you must comply with the mandatory and

22      proposed special conditions attached to the presentence report

23      with the exception of proposed conditions No. 1, 3 and 6.

24                   And then with respect to proposed condition 15, I

25      have amended it to add a phrase at the beginning of condition
```

1  No. 15.  It will read as follows now:  Except as approved by

2  probation, you must not possess and/or use computers as

3  defined by the federal statute or other electronic

4  communications or data storage devices or media.

5  It is ordered that Mr. Clemence pay to the United

6  States a special assessment of $100.  It shall be due in full

7  immediately.

8  The assented to motion for forfeiture, document

9  No. 30, is granted, and the order of forfeiture attached

10  thereto, document 30-1, is made a part of this judgment.

11  Restitution.  It is further ordered that Mr.

12  Clemence shall make restitution in the total amount of $52,000

13  to the following victims in the amounts indicated:

14  John Doe 1 of the 8Kids Series, $3,000.  John Doe 2

15  in the 8Kids Series, $3,000.  John Doe 3 in the 8Kids Series,

16  $3,000.  John Doe 4 in the 8Kids Series, $3,000.  John Doe 5

17  of the 8Kids Series, $3,000.

18  To Honor of the Block PJs Series, $5,000.

19  Jackson of the BluesPlaid3 Series, $3,000.

20  Jordan of the BluedPlaid4 Series, $3,000.

21  Jenny of the Jenny Series, $3,000.

22  Dipper of the Jester Series, $5,000.

23  Kauzie of the RapJersey Series, $5,000.

24  Tara of the Tara Series, $3,000.

25  And Lily of the Vicky Series, $10,000.

1            Interest is waived in this case.

2            The defendant, Mr. Clemence, does not have the

3   ability to pay an assessment under the Amy, Vicky, and Adam

4   Child Pornography Victim Assistance Act of 2018, and the Court

5   waives imposition of an assessment, and the same is true of

6   the JVTA, Justice for Victims of Trafficking Act Assessment.

7   The Court is not imposing those as the restitution obligation

8   is very high and Mr. Clemence is indigent and cannot afford to

9   pay those.

10           The Court shall also waive the fine in this case as

11  Mr. Clemence does not appear to have the financial ability to

12  pay one.

13           Payment is ordered to begin immediately.

14           Payments shall be made in equal monthly

15  installments of $100 within 30 days of commencement of

16  supervision and thereafter.

17           Upon the defendant's commencement of supervision

18  the probation officer shall review the defendant's financial

19  circumstances, and if necessary, recommend a revised payment

20  schedule on any outstanding balance for approval by the Court.

21           Any legal objections to the sentence as imposed?

22           MS. WEILAND:  No, your Honor.

23           MR. NEWMAN:  No, your Honor.  Thank you.

24           THE COURT:  All right.

25           Mr. Clemence, it's my obligation to inform you that

1   you have the right to appeal the sentence that I have imposed

2   to the United States Court of Appeals for the First Circuit

3   located in Boston, Massachusetts.

4           However, any appeal you take must be filed within

5   14 days of the entry of judgment.

6           Court is adjourned.

7           (Conclusion of hearing at 3:28 p.m.)

```
 1              C E R T I F I C A T E
 2

 3

 4        I, Susan M. Bateman, do hereby certify that the
 5   foregoing transcript is a true and accurate transcription of
 6   the within proceedings, to the best of my knowledge, skill,
 7   ability and belief.
 8

 9

10   Submitted:  4-13-22          /s/   Susan M. Bateman _____
                                  SUSAN M. BATEMAN, RPR, CRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```